[Civil No. 3917.   Filed November 16, 1937.]

[73 Pac. (2d)  703.]

WALTER J. BUTLER, Petitioner, v. INDUSTRIAL COMMISSION OF ARIZONA, J. NEY MILES, SAM W. PROCTOR, and L. C. HOLMES, as Members of and Constituting the Industrial Commission of Arizona, NACE MUNICIPAL STADIUM, a Corporation, and RIVERSIDE AMUSEMENT PARK COMPANY, a Corporation, Respondents.

Messrs. Armstrong, Kramer, Morrison & Roche, for Petitioner.

Mr. Don C. Babbitt and Mr. Howard A. Twitty, for Respondents.

LOCKWOOD, J.—This is an appeal by Walter J. Butler, hereinafter called petitioner, from an award of the Industrial Commission denying him compensation. The facts upon which the award is based are not in dispute, and may be stated as follows:

Nace Municipal Stadium is a corporation which operates an athletic park near the city of Phoenix, commonly known as Nace stadium, and which we shall hereafter refer to as the stadium company. Riverside Amusement Company is a corporation which operates an amusement park near the same city, and which we shall hereafter call the park company. Harry L. Nace is a very heavy stockholder in both corporations, and at the times involved in these proceedings was the general manager of both companies, having almost unlimited authority over the employment of help and the direction of such help in the performance of whatever duty he thought necessary. The stadium and the park are about one-half mile apart, and the only rea-

sonable and practical means of getting from one to the other is on South Central Avenue, a public highway. Petitioner was employed by Nace on behalf of the stadium company; his hours were unlimited, he being subject to call during any part of the day or night, and living at the stadium, where he acted as groundkeeper and night watchman, and, in general, did anything necessary in regard to its care and upkeep. The stadium company paid him $75 per month straight salary for his work. He also was employed by Nace, in his capacity as general manager of the park company, to perform various services there. The park company carried him on its pay roll, but paid him by the hour for such work as he performed for it during the day. During the summertime he was also paid $2 every Saturday night; his particular duties at night being the proper parking of cars during dances held at the park, though he was also required to do any other work necessary in assisting about the park during that time. After the dances were over, it was his duty to assist in checking up the accounts and, as watchman, to protect the cashier while the latter was arranging for the proper care of the money received during the evening. His duties at the park stopped when the last auto left, which was usually about 3:30 to 4 A. M. He was at all times under the direction of Nace as to the duties that he should perform both for the stadium company and for the park company, and with the latter's knowledge, approval, and instructions, passed from the park to the stadium, and the stadium back to the park, over South Central Avenue, whenever his duties at either place called upon him to make the change. On Saturday, May 8th, there was, as usual, a dance at the park, and the next day there were to be one or more softball games at the stadium. The grass on the playing field there was not in very good condition, and petitioner had been

instructed specifically by Nace that he was to do everything he could to hurry it along so that it would be in good shape as soon as possible, and especially to see that it was well watered. In order to do this, to the knowledge of Nace it was necessary that he go from time to time during the evening from the park to the stadium in order to change the hoses and sprinklers which were running at the stadium, and then to return to the park to continue with his duties there until such time as, in his opinion, the water again needed changing, thus passing back and forth through the evening, as was required, until the money at the park had been checked and safely cared for and all the parked autos had departed, when he would return to the stadium and remain there until again called for duty at the park. Some time between 1 and 2 o'clock in the morning of May 9th, and while dancing was still going on, petitioner started for the stadium to change the water, informing the cashier at the park that he would return as soon as he had done this, and finish his duties at the park. While he was on his way to the stadium for the purpose above stated, walking on South Central Avenue, he was struck by a hit-and-run driver, and very seriously injured. It is agreed that during the month preceding his injury he had received as compensation for his services from the stadium company the sum of $75, and from the park company $48.37. He made application for compensation under the act (Laws 1925, chap. 83, as amended) to the commission, which was also the insurance carrier for both the stadium company and the park company, and the commission, after hearing all the facts, concluded that the injury from which he suffered did not arise out of or during the course of his employment for either the stadium company or the park company, and denied him compensation.

It is contended by the commission, in substance, that where a man is employed under two separate contracts of hire by two separate corporations, each contract requiring a performance of duties independent of the duties required under the other contract, an injury by accident sustained by the employee when he leaves one place of employment for the purpose of taking up his duties at another one, and in so doing passes over a public highway and is injured thereon, does not occur in the due course of his employment for either employer, and he is not entitled to any compensation whatever.

It is the position of the petitioner that when one is employed by two different employers, subject to call by either of them at any hour of the day or night, and the conditions of his work necessarily require that he travel back and forth over a public highway between the two places of employment in order to carry it on successfully (such fact being well known to and approved by both employers), he is engaged in the business of both masters while so traveling back and forth, and any injury received on such highway, under those circumstances, arises out of and in the due course of the dual employment, and his disability is compensable.

We have held in the case of *Corral* v. *Ocean Accident & Guarantee Corp.*, 42 Ariz. 213, 23 Pac. (2d) 934, 936, as follows:

"The purpose of the compensation act, as has been repeatedly stated, is as much as possible, to dispense with turmoil, contention, and litigation between employer and employee, and to place upon business the burden of caring for employees injured, or, when killed, their dependents. Our compensation law is replete with this thought."

And since the act is wholly remedial, it should be given a liberal construction to accomplish the purpose

intended. *Federal Mut. L. Ins. Co.* v. *Industrial Com.,* 31 Ariz. 224, 252 Pac. 512; *Ocean Acc. & Guar. Corp.* v. *Industrial Com.,* 32 Ariz. 265, 257 Pac. 641; *Federal Mut. L. Ins. Co.* v. *Industrial Com.,* 32 Ariz. 293, 257 Pac. 982; *Kress & Co.* v. *Industrial Com.,* 38 Ariz. 330, 299 Pac. 1034; *Ossic* v. *Verde Central Mines,* 46 Ariz. 176, 49 Pac. (2d) 396, 401. In the last-named case, we said:

"While we may not violate the clear language of the act, merely because in our opinion we think some other provision would have been wiser, yet where there is any reasonable doubt as to the construction to be given it, either in part or in whole, that construction should be adopted which will best effect the purpose of seeing that the injured workman is reasonably compensated for the loss of his earning power caused by the injuries which he has sustained through a compensable accident."

It is evident from the facts of this case that the two employers were, legally speaking, different entities, and that the contracts of employment were separate ones. It is equally clear, however, that, to the knowledge of both employers, the services of petitioner were available on call to either one of them at any time during the day or night, and that he might be required by the separate employers, each with the consent of the other, so to work that it was necessary for him to pass back and forth from one place of business to the other repeatedly in the course of his work, during both day and night, over South Central Avenue.

■■ It is of course the general rule in compensation cases, subject to a few exceptions, that a man does not enter an employment until he reaches the place where the work of his employer is to be carried on, and similarly, when he has finished all the work required by his duties and leaves the place of business of his employer to go to his own home, he has left the

employment, and that an accident which may occur to him on his way to or from his work is not in the due course of his employment. This rule, however, was originally laid down and has generally been applied in cases where the work of the employee was commenced at one fixed time and terminated at an equally definite one, was carried on at a certain place, and his travel to and from his home had no connection with any duty imposed by his employer. *Southern Surety Co. of N. Y.* v. *Cline,* 149 Okl. 27, 299 Pac. 139; *Enterprise Foundry Co.* v. *Industrial Com.,* 206 Cal. 562, 275 Pac. 432. But this rule was soon discovered to be an unjust one when applied in all cases of travel to and from the home of the employee, and it was quickly determined that if an employee was required by his employer to perform services away from his place of employment and out of his regular hours, which required him to travel over a public highway, and an accident occurred thereon, he was entitled to compensation. *Gagnebin* v. *Industrial Com.,* 140 Cal. App. 80, 34 Pac. (2d) 1052; *Ocean Acc. & Guar. Corp.* v. *Industrial Com., supra.* And this was true even though he was on his way home from his regular duties at the time. *Indian Territory Illuminating Oil Co.* v. *Whitten,* 150 Okl. 303, 1 Pac. (2d) 756. The true test is well set forth in the case of *Marks' Dependents* v. *Gray et al.,* 251 N. Y. 90, 167 N. E. 181, 183, in the following language:

"The test in brief is this: If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. *Clawson* v. *Pierce-Arrow Motor Car Co.,* 231 N. Y. 273, 131 N. E. 914. If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been cancelled upon failure of the private purpose, though the business errand was

undone, the travel is then personal, and personal the risk.''

The question then arose, growing out of cases somewhat similar to the present one, when a man had a number of separate employers and his duties were of such a nature that they required him, from time to time, to pass from one place of business to another, as to whether while so passing he was in the due course of his employment. The decisions in such cases are in hopeless confusion. One class of authorities applied the old rule, and held that while an employee was so passing he was not in the employ of either employer and no compensation was due him. Another took a more liberal view and concluded that he was in the service of the employer towards whose place of business he was going at the time of the injury, and allowed him compensation based upon what that particular employer had paid him. A third class of cases agreed with the second that the compensation was due only from the employer towards whose place of business he was traveling, but allowed compensation on the basis of the amount received from all of the employers.

We think that, when the very reason the injured man is in the public highway is that he may properly perform duties imposed on him by several different employers, each with the knowledge and consent of the other, it would be a harsh and illiberal rule, indeed, to say that when he was doing a thing absolutely necessary to carry on his work, he was not entitled to compensation for an injury incurred therein. Such a situation is very different from one where he has completely finished with his work for the day and is proceeding towards his regular domicile for the purpose of satisfying his own personal needs and desires, intending to remain there until he is again required, at some fixed hour of the next day, to return to his occupation by such means as may, in his judg-

ment, seem best. It is evident to us that petitioner would not have been traveling the highway at the time he was injured except in the furtherance of the business of his employers, and his case, therefore, complies with the test of *Marks' Dependents* v. *Gray, supra.*

But, assuming that under the act the petitioner is entitled to compensation, who should pay it and what should be its amount? The second class of cases accept the rule that it should be paid, but, in their endeavor to find just who should pay it, have decided that the employee can only be actually engaged in the service of one separate employer at a time, and have, therefore, generally come to the conclusion that it is that the employer towards whose place of business he is going, and not the one whose location he is leaving, even though he may later intend to return to the latter. We think this conclusion is based on the mistaken idea that when the principal duties which a man performs for one employer are different from those which he carries out for the other, there cannot be other duties of less obvious and immediate utility which link the two principal duties and are performed for both employers.

■■ Let us assume a case where a man is hired by two separate employers under two separate contracts of employment, but each with the knowledge and approval of the other employer. The work which he is expected to do is of such a nature that neither employer requires his full time, and his compensation is, therefore, paid in such a manner that the total amount received from both employers approximates the going wages for full time, although it is proportioned according to the time of the day he is expected to spend for each employer. The two places of employment, however, are so situated and the character of the work is such that he can only perform the ser-

vices adequately by spending practically half of the day passing back and forth from one place of employment to the other. This is known to, and approved by, both employers. We certainly think, under such a case, that the employers must impliedly have understood and agreed that the time he spent in passing back and forth, being necessary to the proper performance of his separate duties, was time spent in the employment for which he was hired. Since the passage both ways was equally necessary for the performance of the work actually done for each separate employer, we think it but reasonable that if he be injured during such passage, he is entitled to compensation based upon a full, instead of a partial, day's wage. And since the full day's wage is paid by the two separate employers, perhaps in varying proportions according to the value of the work actually done for each, it is but right that the compensation should be proportioned to the wages paid by each. Such, we think, is the reasonable, logical, and just construction of the nature of petitioner's employment, and we therefore hold that where, as in the present case, a man is engaged in the service of two employers, with duties at two different places, if those duties are with the knowledge and approval of both employers, to be performed in such a manner that they necessarily require a repeated passage of the employee from one place of business to the other in order that he may properly perform his duties for both, that during such travel back and forth he is in the service of both employers, and if he be injured therein, both are liable to him for compensation in proportion to the remuneration received from each one. Such being the case, both employers should be made parties to any proceeding before the commission.

The award is set aside, and the case remanded.

McALISTER, C. J., and ROSS, J., concur.