437 P.2d 666

**John MICKELSON, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, John Ahearn, C. Lawrence Huerta and Frank G. Murphy, as members of and constituting the Industrial Commission of Arizona, State of Arizona—State Auditor (Arizona State Legislature), Respondents.**

**No. I CA–IC 143.**

Court of Appeals of Arizona.

Feb. 26, 1968.

Rehearing Denied April 5, 1968.

Review Denied June 4, 1968.

Donald J. Morgan and David M. Schreiber, Phoenix, for petitioner.

Robert K. Park, Chief Counsel, by Arthur B. Parsons, Jr., Phoenix, for respondents.

STEVENS, Judge.

The petitioner, John Mickelson, served as a duly elected member of the Arizona Senate for eight years. He left the Senate upon the expiration of his last term on 5 January 1967.

Article 4, Part 2, Section 1, Subsection 2(a) of the Arizona Constitution, A.R.S., fixes the salary of members of the Arizona Legislature, both the House and Senate, at $1800 for each regular Legislative session, plus $20 a day for not to exceed 20 days for each special session, and a like sum for each day for required meetings, with a maximum of $3600 for any one calendar year. The Constitution authorizes the Legislature to

determine the times for the payment of the regular session salary. The $1800 compensation for a Legislative regular session has been fixed by the Legislature in the sum of $200 a week for nine successive weeks. A.R.S. § 41–1103.

In Arizona, the power of impeachment is authorized by Article 8, Part 2 of the Arizona Constitution. Section 1 of Part 2, provides, in part: "All impeachments shall be tried by the Senate * * *". Chapter 126, Laws of 1964, (A.R.S. § 38–314) directed the Senate to "organize as a court of impeachment". * * * The members of the Senate were to be "paid during the impeachment trial the compensation * * * provided by law for members of the legislature when convened in regular session". (A.R.S. § 38–317)

It was during the petitioner's service as a member of the Court of Impeachment that he received the injuries which are the subject of this opinion. This event occurred on 29 May 1964, at which time the petitioner was 56 years of age.

The two major problems confronting this Court relate to the basis for the computation of the petitioner's average monthly wage and the computation of his loss of earning capacity. In this connection we quote a portion of A.R.S. § 23–1044 as follows:

"C. In cases not enumerated in subsection B of this section," (which subsection relates to "scheduled injuries") "where the injury causes permanent partial disability for work, the employee shall receive during such disability compensation equal to fifty-five per cent of the difference between his average monthly wages before the accident and the amount which represents his reduced monthly earning capacity resulting from the disability * * *.

"D. In determining the amount which represents the reduced monthly earning capacity for the purposes of subsection C of this section, consideration shall be given, among other things, to any previous disability; the occupational history of the injured employee, the nature and extent of the physical disability, the type of work the injured employee is able to perform subsequent to the injury, any wages received for work performed subsequent to the injury and the age of the employee at the time of injury."

The petitioner, upon the completion of his formal education, was employed for a time and then became the owner of a one-half interest in the Gila Valley Marble and Granite Works. He later acquired the full ownership thereof. The petitioner secured, and for many years held, a license as a general contractor and he was active in this calling as well as in the operation of the aforesaid business. Not long before the commencement of the 1964 regular session of the Legislature, which commenced early in January of that year, the petitioner sold his interest in the Gila Valley Marble and Granite Works. During the months of October 1963 to March 1964, the petitioner was employed as a building inspector for a recognized architectural firm in connection with the performance of a building construction contract. In this employment the petitioner earned approximately $400 a month, or a total of approximately $2000. The architects knew of his service as a Senator and his fellow Legislators knew of his employment by the architects. The maximum salary permitted to the members of the Senate and the House is obviously insufficient for fulltime employment. The architects were insured by the Arizona Industrial Commission as was the State of Arizona in relation to the petitioner's services as a member of the Senate.

Following the petitioner's injury he received medical care and continued with his responsibilities as a member of the Court of Impeachment. His physical condition grew worse and on 13 July 1964 he submitted to surgery. A hemi-laminectomy was performed and two degenerated lumbar discs were removed. The medical testimony established that the development of the disc condition was probably a long time process. For awhile the petitioner's condition im-

proved, his condition then retrogressed and again improved. In the opinion of the doctors, the petitioner's condition eventually became stationary. An award was entered on 20 April 1966 without a formal hearing. The petitioner entered a timely request for a formal hearing which was held on 19 October 1966 and the decision thereon was rendered on 17 March 1967. The matter was then brought before us on a writ of certiorari.

At the hearing the petitioner reviewed his background as a business man, including his work as a general contractor, as well as his period of service as a Senator. He reviewed his efforts to secure employment prior to August 1965. In that month his first wife died after a serious illness. This great strain together with the petitioner's legislative responsibilities prevented his active efforts in seeking employment. He had made efforts to secure employment prior to his wife's death. The petitioner performed his legislative responsibilities during the calendar year 1966.

At the time of the October 1966 hearing the petitioner testified that his physical condition was such that he was unable to engage in an occupation requiring more than modest physical activity. This was confirmed by the medical evidence. He further testified:

"A Well, I have retired. I have income from my rental and investments over the years. * * * At the present time I am not working at anything. I try and take care of my interests in my rentals and just watching it is all."

The petitioner agreed that he was then capable of performing some types of employment and there is every indication of his continued mental capacity.

The last treating physician also testified at the hearing and we quote from this testimony:

"A Well, he has a lot of objective changes in his back. He has a definite decrease in the range of motion. His X rays do show a lot of hypertrophic arth-

ritis with spurring, and it would be my opinion if he were to be required to walk, stand or stoop for long periods he would have considerable difficulty. * * *

"If any person with these findings sits very long, they will complain of stiffness and discomfort and they will feel like moving and changing their position. When they do, they usually notice discomfort and pain until they are warmed up a little bit. * * *

"Q So he is better off with the changing of position being up for a while and being down for a while, than as in one position?

"A Yes.

"Q Do you think he is limited in bending and stooping to a point he can't engage in a daily activity?

"A I don't believe he would be able to put in much of a day doing it.

*    *    *    *    *    *

"I think he will have difficulty with his back. Now in the Senate I don't know exactly how active that is. I imagine they are permitting (sic) to change their position. I think he could probably carry on as a Senator with some back pain. I don't believe he would be disabled from doing that, but he could probably have more leeway changing his own activity."

The April 1966 Award was reaffirmed by the March 1967 order. In effect, it was determined that the petitioner's average monthly wage was $300 per month, this being one-twelfth of his maximum annual salary as a State Senator, and that as a result of the injuries which he experienced, he sustained a fifteen percent general physical functional disability. The Industrial Commission declined to fix a figure representing his loss of earning capacity asserting that it had no basis upon which to make this determination.

AVERAGE MONTHLY WAGE

The problem of determination of average monthly wage has often been before our appellate courts. We deem the problem to

be of sufficient importance to warrant an historical review of the law in Arizona:

A.R.S. § 23-1041 provides:

"A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

"B. If the injured or killed employee has not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such an amount as, having regard to the previous wage of the injured employee or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident.

"C. If the employee is working under a contract by which he is guaranteed an amount per diem or per month, notwithstanding the contract price for such labor, the employee or his subordinates or employees working under the terms of such contract, or his or their dependents in case of death, shall be entitled to receive compensation on the basis only of the guaranteed wage as set out in the contract of employment, whether paid on a per diem or monthly basis, but in no event shall the basis be less than the wages paid to employees for similar work not under contract.

"D. The term 'monthly wage' means the average wage paid during and over the month in which the employee is killed or injured.

"E. Notwithstanding any other provision of this chapter, in computing the average monthly wage there shall be excluded from such computation all amounts of wages or other compensation for services in excess of one thousand dollars per month.

"F. Prior to determination of average monthly wage and thereafter, compensation shall be paid on a basis of a minimum monthly wage of two hundred dollars for employees twenty-one years of age or over."

This section of the law has been revised several times for the addition of new provisions, however, the basic portions of the law with which we are concerned in this case are still similar to the original enactment.

Brisendine v. Skousen Bros., 48 Ariz. 416, 62 P.2d 326, 112 A.L.R. 1089 (1936) held that a claimant who was employed as a truck-driver for a period of more than one month prior to his compensable accident and whose employment was not for a fixed number of hours per day, week, or month, but was intermittent in character and limited to a maximum of 40 hrs. per week was entitled to compensation only on the basis of wages actually earned during the month immediately preceding the accident. The court said at 48 Ariz. 423, 62 P.2d 329:

"The theory of the present compensation act * * * is to compensate the injured workman on the basis of what he *actually was earning*, and not upon what he *might have earned*, and the premiums on the various payrolls from which the compensation fund must be maintained is based upon that theory." (emphasis supplied)

In Butler v. Industrial Commission, 50 Ariz. 516, 73 P.2d 703 (1937), apparently both employers were before The Industrial Commission and apparently the services rendered were somewhat similar and were concurrent in point of time. The Arizona Supreme Court said at 50 Ariz. 525, 73 P. 2d 706:

" * * * we * * * hold that where, as in the present case, a man is engaged in the service of two employers, with duties at two different places, if those duties are with the knowledge and approval of both employers, to be performed in such

a manner that they necessarily require a repeated passage of the employee from one place of business to the other in order that he may properly perform his duties for both, that during such travel back and forth he is in the service of both employers, and if he be injured therein, both are liable to him for compensation in proportion to the remuneration received from each one. Such being the case, both employers should be made parties to any proceeding before the commission."

Hershkowitz v. Arizona Highway Department, 56 Ariz. 494, 109 P.2d 46 (1941) held that where an employee had been working only three and one-half days before his injury, the amount of allowance to be awarded would be determined on a wage basis reasonably representing his monthly earning capacity in the employment in which he was working at the time of the accident. [*Hershkowitz* was overruled, in part, on other grounds in Ross v. Industrial Commission, 82 Ariz. 9, 307 P.2d 612 (1957).]

Galaviz v. Industrial Commission, 61 Ariz. 377, 149 P.2d 837 (1944), held that the average monthly wage of an employee, who had been continuously employed by the same employer for many years and who was killed at work about 2 weeks after he resumed work following a vacation during which time he drew no wages, was required to be computed under the compensation act on the basis of the employee's previous average monthly wages and not on the basis that the employee had been employed less than thirty days.

Kennecott Copper Corporation v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839 (1944), held that the average monthly wage of an employee, who had worked for the same employer for more than 30 days before his death, was required to be determined under the compensation act by the amount the employee was paid on account of his normal and overtime wage for the previous thirty days and did not include the wage of a fellow employee for whom the deceased employee had substituted and thereby gained more than the normal hours of employment for the month.

Jackson v. Del E. Webb Construction Co., 61 Ariz. 391, 149 P.2d 685 (1944) indicates that the monthly wage is to be computed having regard only to the employment of the employee at the time of the accident. The court said that the wage of the employee immediately preceding the time of injury is to be used as the basis for figuring average monthly wage. (As will be pointed out later, this last statement was specifically disapproved in Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217.)

In Wells v. Industrial Commission, 63 Ariz. 264, 161 P.2d 113 (1945), the petitioner was regularly employed as a salesman. Without the knowledge of his employer, and during hours when he was not engaged in his regular employment, he worked as a painter in the thirty days preceding his injury for two different employers. The Commission allowed him benefits on the basis of his total wages earned for the thirty day period, exclusive of a bonus received from his regular employment.

In *Wells* the employers were insured in all of the various occupations in which the employee was employed and as to each of his employments he was an employee within the meaning of the Workmen's Compensation Act. At the time of the injury he was working for the respondent, Hensley, who had knowledge that petitioner was also being employed by another contractor. In setting the average monthly wage, the Commission applied the rule of Butler v. Industrial Commission, 50 Ariz. 516, 73 P.2d 703.

The Supreme Court affirmed the award of the Industrial Commission and made the following statements which we consider to be significant:

"May the total wages of an employee from different employers be used as the basis for benefits when the injury arises out of one of the employments wholly unrelated to the others? In such case, may the award be assessed against the em-

ployer for whom the employee was working at the time of the accident?

\*   \*   \*   \*   \*   \*

"Where an employee is working for several different employers and is injured, in order that he may be reasonably compensated for the loss of his earning powers, his total wages must be taken into consideration. Any other construction of the statute would result in great injustice and lead to absurdities. For instance, a skilled employee might be regularly employed during different periods of a month in separate occupations on a part-time basis. If he happened to be injured in the employment that paid him the least amount of money during the month, and his wages from the other employments could not be considered, he would receive entirely inadequate compensation which would not represent his earning capacity. "Under statutes similar to ours, it is held that the proper wage is the total received from all employers. (citing cases) These cases hold also that when the employments are not joint, as in the Butler case, the entire burden of payment or responsibility falls upon the employer in whose employment the workman was injured \* \* \*.

"While the matter is not now before us, we feel it our duty to state that where, as here, an employee is injured who is working in several employments and the burden of compensation is imposed upon one employer, the basic wage upon which benefits are computed should be limited to the total amount that the employee would have received from such employer if he were employed continuously at the usual and regular rates for the particular services he was performing at the time of the accident. It is our view that the statute does not contemplate that any employer for whom an employee is working on a part-time basis should be compelled to assume a burden of compensation greater than the amount chargeable if the employee were working for him on a full-time basis."

(As will be pointed out later, part of the implications of the Wells case were overruled in Sanchez v. Industrial Commission, 96 Ariz. 19, 391 P.2d 579.)

Barron v. Ambort, 64 Ariz. 209, 167 P.2d 925 (1946), held that where an employee, who had died as a result of injuries sustained in the course of employment for a dairy company, was at the time of his death working under a contract guaranteeing a wage of $75 per month plus a 4% commission on all sales, the commission constituted a part of the employee's earnings and wages and should be included in determining his average monthly wage basis.

The leading case on average monthly wages is Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217 (1949). The original opinion is reported beginning at page 159. The opinion on rehearing, which materially modified the original opinion, is reported in 69 Ariz. beginning at page 171. This case expressly disapproves of Jackson v. Del E. Webb Construction Company, 61 Ariz. 391, 149 P.2d 685. In *Steward* the court said that you do not look merely to the wages of the employee immediately preceding the accident unless he was employed for less than 30 days. You must ascertain his monthly earning capacity. The court said you ascertain this monthly earning capacity "in the employment in which he is working at the time he is injured". In other words, you ascertain monthly earning capacity by averaging wages over several months if the employee was working for more than 30 days in the employment in which he was injured. The court said at 69 Ariz. 177, 211 P.2d at 229:

"In arriving at what reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time he is injured, other factors than the daily, weekly, or monthly wage or scale of wages must be considered. The opportunity afforded for work in that particular employment whether it be intermittent or seasonal or whether it is con-

tinuous the year round is an important factor to be considered."

In speaking of average wage and seasonal employment the court said in Steward at 69 Ariz. 178, 211 P.2d 230:

"Let us further illustrate the absurdity to which the construction in the Jackson case leads. Let us take the case of a cantaloupe packer who make (sic) $50 to $60 per day during the cantaloupe season, or for convenience, let us say that he makes $1,000 a month during that period. He is what is known as a seasonal or intermittent worker and works approximately three to four months per year in this employment, but let us again for convenience assume that he makes $4,000 a year. If he has been employed less than a thirty day period immediately prior to his injury and is injured on the 29th day of his employment while packing cantaloupes, his compensation under the rule in the Jackson case, supra, would be based upon an average monthly wage of $1,000, whereas if he happened to be injured in any thirty day period of his employment subsequent thereto the average monthly wage upon which his compensation must be based would be 1/12th of $4000 or $350 per month. (citing case) The conclusion reached in the Jackson case, supra, therefore is illogical, unjust, and leads to absurdity."

In Shaw v. Salt River Valley Water Users' Association, 69 Ariz. 309, 213 P.2d 378 (1950), the Court said that compensation to an injured employee under the Workmen's Compensation Act is based on the average monthly wage of the injured employee in the employment in which he is working at the time of the accident. Notice here once again that the court states that the average monthly wage must be computed in regard to the employment in which the worker is working at the time he is injured thus indicating that if he was engaged in several employments, it would not be proper to combine wages from the different employments in order to arrive at average monthly wage.

In Faulkner v. Industrial Commission, 71 Ariz. 76, 223 P.2d 905 (1950), the petitioner was injured while working at a part-time job, the job being covered by a policy with the Industrial Commission. At the time of the injury he was also holding down a full-time job which was not covered by workmen's compensation insurance. The Industrial Commission refused to include wages received from the full-time employment in computing average monthly wages. The Supreme Court upheld the action of the Industrial Commission on the basis that the full-time employer did not contribute to the compensation fund. The court distinguished this situation from cases where a party is holding down two jobs both of which are covered by workmen's compensation. The court also reiterated the rule of Brisendine v. Skousen Bros. to the effect that the injured workman is to be compensated on the basis of what he actually was earning and not upon what he might have earned.

In Field v. Industrial Commission, 73 Ariz. 133, 238 P.2d 953 (1951) at the time of his injury, the petitioner had been employed for 51 days. In determining his average monthly wage, the Commission took into account that he had asthma and was 55 years old at the time of his injury, and then figured his average monthly wage with regard to "past work history, previous physical condition, the economic situation and 'all other factors, as required by law', * * *". After finding that the asthmatic condition had not affected petitioner's ability to work, the court made the following statements:

"The next question presented is what emphasis is or should have been placed on the past work history of the petitioner? It is true that he had been unemployed for practically 11 months prior to the time he secured employment with the respondent employer. In determining the 'average monthly wage' of an employee entitled to compensation, the work record is a factor to be considered when the injured employee is engaged in periodic or

spot employments which were dealt with and recognized by this court in Gene Autry Productions v. Industrial Commission, 67 Ariz. 290, 195 P.2d 143; Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217; Haggard v. Industrial Commission, 71 Ariz. 91, 223 P.2d 915. * * *

"Our Workmen's Compensation Act provides that employees injured by accident arising out of and in the course of their employment shall receive compensation ' * * * on the basis of average monthly wage at the time of injury. * * * ' Provision is then made for establishing the formula to be followed where the employee has not been continuously employed for 30 days immediately preceding the injury. This section has been considered by this court on numerous occasions, and we thought reasonably and comprehendingly construed in the Steward case, supra. The statute under consideration provides that the average monthly wage is that wage which 'reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident'. The amount earned by any employee in the 30 days immediately preceding his injury may or may not represent his 'average monthly wage'. It is not the amount of money earned in the 30 days immediately preceding the injury that is controlling unless that amount happens to be an amount identical with the average monthly wage, Steward case, supra. In the instant case, it appears that the average monthly wage of the petitioner (in view of this record of no lost time with this employer), in any event would have been $352.00 a month predicated upon the wage base of $2.00 an hour 8 hours a day for 22 days per month, without overtime. If overtime is included, then his average monthly wage would have exceeded the sum of $352.00 per month. If overtime is a normal and usual characteristic of the employment, then it is a factor to be taken into consideration in arriving at the average monthly wage. * * *"

In Pettis v. Industrial Commission, 91 Ariz. 298, 372 P.2d 72 (1962), the petitioner sustained an injury arising out of and in the course of his employment as a timber cutter. He had been so employed for 12 months prior to his injury, but during this time he had worked for two different employers. In computing the average monthly wage of the petitioner, the Commission totaled the amounts received during the 12 months period preceding the injury and divided the resultant sum by 12 to arrive at average monthly wage. Petitioner contended that the computation was in error and asserted that where an employee has been continuously employed by the same employer during the 30 days preceding the date of injury, the wages earned during that period are conclusive as to the average monthly wage of the employee. To support his position he relied on A.R.S. § 23–1041 subsection D which provides:

"The term 'monthly wage' means the average wage paid during and over the month in which the employee is killed or injured."

Relying on Steward v. Industrial Commission, the court rejected this contention because the court said that under the decision in *Steward*, subsection D can only apply where the employee has worked for a period of less than 30 days. The court then held that the formula used by the Commission, that is, dividing by 12 the actual total earnings of the petitioner during the 12 month period prior to his injury, was not erroneous but the court did hold that it was error for the Commission to include a 2 month period during which time petitioner did not work due to a shutdown by his employer. The Commission had included this two month layoff period as a factor to be considered on the grounds that the business was seasonal or intermittent. The court held that the employment

was not seasonal and defined seasonal employment as follows:

"Seasonal employment refers to occupations which can be carried on only at certain seasons or fairly definite portions of the year. It does not include such occupations as may be carried on throughout the entire year."

The court further stated:

"Where an injured employee loses time during the previous year for reasons over which he has no control, and where the loss of time is not a common and ordinary incident to the particular employment, such time should be omitted in computing his average monthly wage."

In Johnson v. Industrial Commission, 92 Ariz. 263, 375 P.2d 866 (1962), the petitioner was a prisoner in Yuma County Jail and had been given the opportunity to assist in dismantling buildings for a nonprofit corporation. He was compensated by being given food, lodging, sundries and cigarettes and had worked less than 30 days before he was injured. The court said at 92 Ariz. 265, 375 P.2d 868:

"The Commission may consider the previous wage of the injured person if he had been employed a length of time reasonably sufficient in that neighborhood in the same employment to enable the Commission to determine what his average monthly wage would be. (citing *Steward*) However, where he has not, it would be necessary to consider the previous wage of other employees in the same or most similar employment in the same or neighboring locality in determining the average monthly wage. (citing *Steward*)

"In the instant case the petitioner had worked less than thirty days. In addition, he was compensated by Yuma County Fair, Inc., providing him with food, lodging, sundries and cigarettes. His 'previous wage' (food, lodging, sundries and cigarettes) would not reasonably represent his monthly earning capacity in that employment. Hence, the Commission should have considered the pre-

vious wage of other employees in the same or most similar employment in the same or neighboring locality. (citing cases) However, petitioner's work record is a factor to be taken into consideration in arriving at what reasonably represents his monthly earning capacity. The Commission may take into consideration petitioner's lost time from work due to his asthmatic condition and his drinking habits as they affect his monthly earning capacity."

In Sanchez v. Industrial Commission, 96 Ariz. 19, 391 P.2d 579 (1964), the court said:

"This State is committed to the principle that the wage basis of an employee injured in one of two unrelated employments in which he was concurrently employed will not be combined where the concurrent employer was not subject to the compensation act. * * *

\* \* \* \* \* \*

"The commission could not, as a basis for compensation, have combined the earnings prior to the injury of the dissimilar employment of miner and musician. But it has, after the injury, offset earnings as a musician against loss of earning as a miner. We think, in the light of the announced principle, it would be inequitable for the commission to do so."

The court then went on to indicate that earnings from dissimilar employments can be offset as can earnings from similar employments if the dissimilar employment becomes a substitute for the employment in which the injury was sustained.

The court relied on Faulkner v. Industrial Commission as authority for its ruling that the wages could not be combined and said that *Faulkner* was consistent with the usual rule that where employments are dissimilar the earnings will not be combined. The court also overruled any inference to the contrary arising from Wells v. Industrial Commission. *Wells* had indicated that it was proper to combine wages from several different employments and did not re-

quire these employments to be similar. In *Faulkner,* the court had not disapproved of the decision in *Wells*. It had distinguished *Wells* on the basis that in *Wells* the several employers were all covered by the compensation act. The holding in *Faulkner* turned specifically on the fact that only one of the employers was covered by the compensation act. In *Sanchez,* the court extended the holding of *Faulkner* to mean that wages from dissimilar employments cannot be combined even if all employers are covered by workmen's compensation.

In Kurtz v. Matich, 96 Ariz. 41, 391 P.2d 594 (1964) the court said:

"Normally, consistent with Kennecott Copper Corporation v. Industrial Commission, supra, the thirty days previous to the injury should be the basic wage for computing compensation but if the employment is intermittent for reasons over which the employee has (no) (sic) control or the loss of time is a common and ordinary incident to the particular employment, the Commission may properly average a longer period to determine a wage base."

In Graver Tank & Manufacturing Company v. Industrial Commission, 97 Ariz. 256, 399 P.2d 664 (1965) the court said:

"The evidence indicates that during the last six and one-half months, employee earned about $7800. During his five months with employer he earned over $6400. During 17 of his 22 weeks with employer he worked overtime. Because of some unemployment, employee's earnings for the one year preceding the accident were about $8700. Employer contends that the commission in determining the average monthly wage should have used employee's earnings over the entire year. They also contend the commission erred in considering his overtime because of the unusual nature of the circumstances.

"A.R.S. § 23–1041 (1963) provides that the compensation shall be fixed 'on the basis of such employee's average monthly wage at the time of injury.' The sec-tion defines the term monthly wage as 'the average wage paid during and over the month in which the employee is killed or injured'. In addition, this Court has said both normal and overtime wages must be taken into account.

"(citing case)

"The Commission in compliance with the above rules found employee's average monthly wage to be $1,000. The evidence shows that for over six-months preceding the injury employee earned on the average of $1200 a month. We feel there is sufficient evidence to support the Commission's finding."

In Wesolowski v. Industrial Commission, 99 Ariz. 4, 405 P.2d 887 (1965), the petitioner was injured while working as a water meter reader. This was his full-time employment, however, he also had a part-time job as a truck driver. Both of his employers were subject to the Workmen's Compensation Act. The Industrial Commission computed his average monthly wage only on the basis of his wages as a water meter reader. The Supreme Court upheld the Commission's determination of average monthly wage, relying upon Sanchez v. Industrial Commission.

In Waller v. Industrial Commission, 99 Ariz. 15, at 21, 406 P.2d 197, at 201 (1965), the Court said:

"Under the provision of A.R.S. § 23–1041 (1963), the Commission fixed the average monthly wage of the petitioner prior to the injury at $408.49. The Commission used a period of 405 days in order to arrive at its findings. In arriving at this figure the Commission eliminated the total number of days petitioner was off work because of hospitalization. (citing case) Petitioner contends that his average monthly wage should have been approximately $500 per month, based on his income tax returns for the past three years.

"The measure of compensation for injuries received in industrial accidents is computed on the basis of the injured employee's 'average monthly wage at the

time of injury'. A.R.S. § 23–1041, subsec. A (1963). According to Kennecott Copper Corp. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839 (1944), the thirty days previous to the injury should be the basic wage for computing compensation. Where, however, the employment was intermittent for reasons over which the employee has no control or the loss of time is not a common and ordinary incident to the particular employment, the Commission should omit such time in computing the average monthly wage. In Pettis v. Industrial Commission, supra, we approved the computation of average monthly wage by averaging the wages earned over a twelve month period. Consistency demands that we approve the Commission's method of computation in this case."

A reading of the foregoing cases reveals that some inconsistencies have developed in this area. In our opinion the formula for the computation of the average monthly wage is one for legislative declaration. In the absence of a situation similar to that presented in Butler, it is our opinion that the statute permits us to consider only the income of the employee which he received from the particular employer at the time of the injury. This statement is made with the full realization that in computing the average monthly wage, there are statutory requirements for the consideration of wage earning factors which may relate to employment other than the employment at the time of the injury as for example, where the period of employment has been exceedingly brief. We agree with The Industrial Commission that in the matter which we now have under consideration, the petitioner's average monthly wage is limited to the consideration of the compensation he received for his responsibilities as a Senator, while sitting as a member of the Court of Impeachment.

Do we then approve the method of using one-twelfth of the Constitutional annual maximum, that is, do we approve of the determination by the Industrial Commission that the petitioner's average monthly wage was $300? It is urged that at the time of the accident the petitioner had not utilized and drawn the full $3600 annual maximum and that at the time of the accident, he was receiving $200 a week or slightly more than $800 a month. It is urged that even if we do not consider his income as a building inspector, the average monthly wage was at least $800 a month and not merely $300 per month. It is our opinion that in answering this question we should consider the following hypothetical and yet realistic question, namely, should it be that the petitioner's Senatorial duties required his daily service to the extent that he had drawn the full $3600 maximum allowed under the Constitution, and that he thereafter served without compensation, and should it further be that he was injured during the period of time when he was receiving no daily or weekly compensation for his legislative services, certainly it would not be realistic to hold that at the time of his injury his average monthly wage was "0". In our opinion we need not resolve this issue on the basis of whether the senatorial compensation can be classified as "seasonal". Under these unusual circumstances, we find that the method used by The Industrial Commission in fixing the average monthly wage at $300 was correct.

## LOSS OF EARNING CAPACITY

The statutory formula requires a determination of "the reduced monthly earning capacity". Again we find we are faced with a unique situation. The petitioner is fully qualified mentally and, with some limitations, qualified physically to perform duties as a member of the Arizona Senate. The petitioner is fully qualified to render many services calling for but limited physical activity. The Industrial Commission was not presented with a real basis for determining the loss of earning capacity. We recognize that petitioner did prefer to engage in gainful employment. We do not have before us the situation of a laborer who by reason of physical limita-

tions, is no longer able to follow the only line of endeavor for which he is qualified and has, therefore, "retired". The record before us discloses the petitioner's retirement was not entirely because of his physical limitations. It may be that circumstances may arise which would authorize a re-opening of this claim and the showing of a proper basis for determination of the loss of earning capacity. In this connection reference is made to Adkins v. Industrial Commission, 95 Ariz. 239, 389 P.2d 118 (1964); Maness v. Industrial Commission, 102 Ariz. 557, 434 P.2d 643 (1967).

Under all of the circumstances presented to this Court we find that the evidence before The Industrial Commission reasonably supports the questioned Award and the order re-affirming said Award.

The Award is affirmed.

CAMERON, C. J., and DONOFRIO, J., concur.