[Civil No. 3784. Filed November 23, 1936.]

[62 Pac. (2d) 326.]

EVERETT BRISENDINE, Petitioner, v. SKOUSEN BROTHERS, Defendant Employer; THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD., Defendant Insurance Carrier and THE INDUSTRIAL COMMISSION OF ARIZONA, Respondents.

Messrs. Mathews & Wheeler, for Petitioner.

Mr. Don C. Babbitt, Mr. Frank L. Snell, Messrs. Strouss & Salmon, for Respondents.

LOCKWOOD, C. J.—Everett Brisendine, hereinafter called petitioner, was injured by an accident arising out of and in the due course of his employment. He was paid a certain sum for temporary total disability, but his condition apparently became static, and on May 18, 1936, an award was made him, finding that he had received a permanent partial disability equal to 33⅓ per cent. loss of function of the left leg, and

that he was entitled to compensation therefor in the sum of $27.85 monthly for a period of 16¾ months. Petitioner, being dissatisfied with the award both as to the percentage of disability and the wage basis upon which the compensation was calculated, asked for a rehearing, which was granted, and the award was affirmed, whereupon the matter was brought before us in the usual manner.

There are two questions for our consideration: (a) What is the percentage of functional disability, and (b) was the base rate of wages on which compensation was calculated properly adopted?

So far as the first question is concerned, there is but little to be said. There is the usual conflict in the evidence as to the extent of the disability and, such being the case, we are bound by the findings of the commission upon this point. If it should appear later that this disability has increased since the date of the award, petitioner may ask for a readjustment of compensation, in accordance with the law.

The second question is more difficult. Petitioner entered into the employ of Skousen Brothers, who were then performing a road contract with the state of Arizona, as a truck driver, on January 16, 1935, and continued in such employment to and including February 20, 1935, the date upon which he was injured. He received as compensation for his services the sum of 68¾ cents per hour for the time he worked, and the undisputed evidence shows that from January 16th to the 31st, he was paid $19.31; from February 1st to February 15th, $22; and from February 15th to February 20th, the date of his injury, $15.13. The commission found that of this $56.44, there was paid during the month immediately preceding the accident $55.69. It also appears that his work was irregular in its nature; that is, he did not perform a

fixed number of hours' work each week or month of his employment, but worked only when called upon by his employers. It is his contention that he was entitled to work forty hours per week, and that his base rate of pay, for the purpose of compensation, should be the amount which he would have received had he really worked the full forty hours, or $110 per month, instead of the $55.69 actually received and upon which the commission calculated his compensation. It is the position of the commission, on the other hand, that the basal monthly pay, upon which his compensation must be calculated, is the amount of money actually received by him for work performed during the month immediately preceding his accident.

The question is one of first impression in this jurisdiction, and is of considerable importance. It will be determined by the proper construction of section 1438, Revised Code of 1928, as amended by chapter 11 of the First Special Session of the Legislature, 1933, which reads, so far as material, as follows:

*"Measure of compensation; total and partial disabilities.* Every employee of an employer within the provisions of this article, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined in case of his death, shall receive the compensation herein fixed, on the basis of monthly wage at time of injury. The term, 'monthly wage,' shall mean the average wage paid during and over the month in which such employee was killed or injured. In all instances in which the injured or killed employee had not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such sum as, having regard to the previous wage of the injured employee, or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the

injured employee in the employment in which he was working at the time of the accident. If the employee was working under a contract with his employer under the terms of which the employee was guaranteed an amount per diem or per month, notwithstanding the contract price for such labor, then said employee or his subordinates or employees working under the terms of said contract, or his or their dependents in case of death, shall be entitled to receive the compensation on the basis only of the guaranteed wage as set out in said contract of employment, whether such amount was paid on a per diem basis or on a monthly basis, provided that in no event shall such basis be less than the wages paid to employees for similar work not under contract.''

It is the contention of petitioner that his occupation comes under either the third or the fourth sentence of the section, while the commission insists that the second sentence applies. Section 1438, as originally adopted, did not contain the third sentence above set forth. It frequently appeared in claims for compensation that the workman had been employed only a few days or, at times, a few hours before the accident occurred, and the wages which he had actually earned during the month in which he was injured were very meager, amounting to but a few dollars. The compensation, if calculated on that basis, was necessarily merely nominal. The legislature, realizing the injustice of such a situation in 1933 amended the section by adding the third sentence above set forth, which undoubtedly was intended to meet situations of the kind just described. It provided, in effect, that if an employee had not been continuously employed for the month preceding the injury, the wage basis upon which compensation should be calculated should be the amount which he *would* have received during the month if he had been continuously employed. · The question then arises: What is meant by ''continuously employed'' as used in the sentence?

It is the theory of petitioner apparently that it refers not only to a situation where the employment itself has only lasted a few days, but to employment which has endured perhaps for many months but which is intermittent in its nature so that the actual time worked is less than the time usually worked by those in the same general character of employment. In the present instance, it is apparently the theory of the petitioner that all truck drivers working on state road contracts for private contractors were customarily employed at least forty hours per week, and that, such being the case, even though he had worked much less than this number of hours, as a matter of fact he was entitled to compensation on the basis of that period.

The American compensation acts are generally based upon the theory, and in many cases follow the language, of the English act, which was one of the first adopted. In that country, a similar question to the one involved in the present case has frequently arisen. In the case of *Anslow* v. *Cannock Chase Colliery Co.*, L. R. App. Cas. (1909) 435, the court said as follows:

"The question is in regard to the way in which the average weekly earnings of a workman shall be computed in a case in which a normal and recognized incident of his work was fourteen weeks' stoppage and two weeks of general holidays during the year.

"The object of the Act broadly stated is to compensate a workman for his loss of capacity to earn, which is to be measured by what he can earn in the employment in which he is, under the conditions prevailing therein, before and up to the time of the accident. If he takes a holiday and forfeits his wages for a month, then that does not interfere with what he can earn. It is only that for a month he did not choose to earn. So, too, if there be a casualty accidentally stopping the work. But if it is part of the employment to stop for a month in each year, then he cannot earn wages in that time in that employment, and his capacity to earn is less, over the year.

"I agree with what the learned Master of the Rolls says in his judgment when he uses the following language: 'In my opinion the true test is this: What were his earnings in a normal week, regard being had to the known and recognized incidents of the employment? *If work is discontinuous, that is an element which cannot be overlooked.'*" (Italics ours.)

It is a well-known fact that our act was, to a great extent, modeled on that of the state of Utah. In the case of *State Road Com.* v. *Industrial Com.*, 56 Utah 252, 190 Pac. 544, 548, a similar question was considered. The Utah statute (Comp. Laws 1917, § 3142) provided that "the average weekly wage of the injured person at the time of the injury shall be taken as the basis upon which to compute the benefits," while our statute says that the employee shall "receive the compensation herein fixed, on the basis of average monthly wage at time of injury." The two statutes are thus seen to be similar in substance, except that in one case weekly and in the other monthly wage is used. The court went quite fully into the question, reviewing all of the authorities which appeared to in any way bear thereon, and then said:

"It is contended by defendant's counsel with much force and considerable eloquence that, in computing the compensation to be awarded the dependents of an employee whose death was caused by accident, the earning capacity of the deceased, and not the amount previously earned, should constitute the basis of compensation. If by 'earning capacity' is meant what the employee could have earned as the business was carried on, including the element of discontinuousness incident to the nature of the employment, we have little or no fault to find with the contention; but if by 'earning capacity' is meant what the employee might earn on the assumption that he worked full time, or for three hundred days in the year, we cannot agree with the contention as applied to a case of this kind. Whenever the term 'earning capacity' is used in cases arising under the Workmen's Compensation Acts it will

generally be found that it has reference to earning capacity in the particular employment as it is carried on. When we consider the fact that no person can possibly have an earning capacity in a particular employment greater than the opportunities afforded by that employment, we obtain a clearer conception of what is meant by 'earning capacity,' as the term is used in this class of cases. To say that a person had an earning capacity of $3 per day for 300 days in the year, and that therefore his compensation, or that of his dependents, should be computed on the basis of $900 per year or $17.30 per week, where the employment in which he was injured was intermittent and could only run for a small fraction of the time, is a manifest paradox. Such a contention has no logical basis upon which to stand. We must therefore find some other method of computation in the present case more in accord with the legislative intent.

"Counsel for both parties in the case have injected into the discussion theories relating to the question of insurance. Plaintiff contends that the insurance fund as collected and maintained is not sufficient to pay full-time compensation in a case of this kind, where the employment is intermittent, and where the employee had employment for only a small portion of the time. Defendant, on the other hand, insists that the fund is collected and maintained so as to allow full-time compensation for every death by accident which may occur in the course of the employment, whether the employment be intermittent or continuous. It is sufficient to say that, as far as the present case is concerned, the theories advanced are academic. There is nothing in the record of the case to justify the court in giving such theories serious consideration. We are bound by a statute which says: 'The average weekly wage of the person injured, at the time of the injury, shall be taken as the basis upon which to compute the benefits.' The difficulty confronting the court is to construe that statute so as to give it effect in the instant case. It is impossible to construe it to mean exactly what it says. An average cannot be computed by means of a single factor. The ordinary meaning of the word implies that more than one factor must be considered. Webster defines the word,

'A mean proportion, medial sum or quantity, made out of unequal sums or quantities.' The Legislature evidently intended that the weekly wage should be computed with reference to some period of time, including the date of the injury. It intended that the wage at the time of the injury should be considered in connection with wages previously earned. For how long previous, the statute is silent. The Industrial Commission, and others upon whom the duty may be imposed, are left without a guide. They must determine the question as best they can. In the absence of a statutory formula we know of no better rule than that expressed in the English statute, *supra*: 'The average weekly earnings shall be computed in such manner as is best calculated to give the rate per week at which the workman was being remunerated.' We have shown, by the English decisions referred to, the method of computation adopted in that jurisdiction. If the workman is employed at irregular intervals or at irregular amounts, the wage is determined by dividing the aggregate by the number of weeks.''

After considering the case as viewed in the light of the interpretations of the various compensation acts, we are of the opinion that the rule laid down by the Supreme Court of Utah is logical and consistent. It is true that it is a hardship to a workman who has been employed intermittently during a period of several months, and has, therefore, earned much less than he might have earned had he been working eight hours per day for twenty-six days of the month, a thing which he was able, ready, and willing to do if called upon, and who is permanently disabled during his intermittent employment, that he should receive compensation upon so meager a scale as that which he would thus secure. The theory of the present compensation act, however, is to compensate the injured workman on the basis of what he *actually was earning,* and not upon what he *might have earned,* and the premiums on the various payrolls from which the compensation fund must be maintained is based upon that

theory. An employer does not pay a premium upon the amount of wages which his employees *might* have earned, but upon that which they actually *did* earn, and to allow compensation upon a different basis would bankrupt the fund. Let us, for example, consider a man who was capable, due to superior skill or training, of earning $500 per month in his ordinary calling, but who was compelled, due to temporary circumstances, to accept an employment which paid only $100 per month, and while so employed was totally and permanently disabled. His normal earning capacity of $500 is undisputed, and yet it is obvious that it would be utterly unfair to the employer and the fund, under the act as it is now worded and applied, to pay him compensation on the basis of the $500 earning capacity which had been destroyed.

So long as the premium payable to the compensation fund or for private casualty insurance is based upon the real payroll of the employer, just so long the compensation paid must be based upon the wages actually received by the employee. If the legislature should desire to substitute any other basis of compensation it may, perhaps, do so, and such new system may be wiser than the present one, but it is the legislature, and not the courts, which must make the change.

The fourth sentence applies to cases where the employee has been guaranteed a minimum wage by a contract. If, as a matter of fact, the evidence showed that petitioner had been guaranteed by the terms of his employment a minimum number of hours per week, we think this sentence of the section would have applied and that his compensation should have been calculated on that basis. There is, however, no evidence in the record that he had been guaranteed any particular number of hours per week. The only reasonable conclusion to be drawn from the evidence upon this point is that at the time of his employment,

it was customary to limit the *maximum* number of hours which any employee could work to forty hours per week, but that there was nothing in the law, nor any contract between petitioner and his employer, which required that any particular number of *minimum* hours' work per week should be given him. Such being the case, we think he may not claim compensation on the basis of the fourth sentence of the section.

For the foregoing reasons, we hold that the compensation of an employee who has been employed for a period of more than one month, but whose employment, by its nature and the terms thereof, is not for a fixed number of hours per day, week nor month, but intermittent in its character, is entitled to compensation only on the basis of the wages actually earned during the month.

The award is affirmed.

McALISTER and ROSS, JJ., concur.