372 P.2d 72

James A. PETTIS, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona and Henning & Turnbull, Respondents.

No. 7424.

Supreme Court of Arizona.

En Banc.

June 6, 1962.

Tupper & Skeens, Phoenix, for petitioner.

Donald J. Morgan, Phoenix, for respondent Industrial Commission. Edward E. Davis, C. E. Singer, Jr., Lorin G. Shelley and Ben P. Marshall, Phoenix, of counsel.

JENNINGS, Justice.

Petitioner, James A. Pettis, sustained an injury to his back in an accident arising out of and in the course of his employment with Henning & Turnbull on May 11, 1959. Thereafter, on January 17, 1961, the Industrial Commission of Arizona, hereinafter called "Commission", entered its findings and award which included the finding "That the average monthly wage of applicant prior to injury was the sum ·of $428.11" and the finding "That applicant has sustained a 15% general physical functional disability as the result of said accident." Petitioner duly filed a petition for rehearing on the basis that the evidence did not support the finding of petitioner's average monthly wage prior to injury. On May 12, 1961 a hearing was had before the Commission and on September 6, 1961 the Commission entered its decision on rehearing affirming its previous findings and award. Petitioner now seeks, by writ of certiorari, to have the findings and award set aside.

Petitioner, a timber cutter, was employed by Mavis Gilbert (an independent timber contractor) from May 11, 1958 to July 25, 1958, during which time he was paid $1,799.25 in wages. From July 28, 1958 to May 11, 1959 (the date of petitioner's injury) he was employed by Henning & Turnbull. During this period of employment, petitioner was paid $3,338.08 in wages and $1,629.40 in saw rental. In addition, during the period from June 1, 1959 through October 3, 1959, petitioner was paid $237.65 in wages and $113.08 in saw rental for timber cut by petitioner prior to the date of injury but scaled subsequent thereto.

The Commission, in computing the average monthly wage of petitioner, totaled the amounts received as wages during the twelve-month period preceding the petitioner's injury (May 11, 1958 to May 11, 1959) and divided the resultant sum by twelve thus arriving at an average monthly wage of $428.11. In computing such wage the Commission included a two-month period (February 7, 1959 to April 5, 1959) during which time petitioner did not work due to a shutdown by his employer and omitted the $237.65 earned by petitioner during the period preceding his injury but paid subsequent thereto. Nor did the Commission take into consideration saw rentals paid petitioner by Henning & Turnbull during the period preceding his injury.

Petitioner's assignments of error involve the issue of whether the evidence supports the finding that petitioner's average monthly wage was $428.11. A.R.S. § 23–1041 (1956) provides that employees injured by accident arising out of and in the course of their employment shall receive compensation " * * * on the basis of such employee's average monthly wage at the time of injury." Petitioner contends that his "average monthly wage at the time of injury" was that amount earned during the thirty-day period preceding the date of his injury and that this sum would include not only the wages but also a substantial portion of the saw rental and a proportionate share of the wages and saw rental paid subsequent to the date of injury but earned prior thereto. It is his position that where an employee has been continuously employed by the same employer during the thirty days preceding the date of injury, the wages earned during that period are conclusive as to the average monthly wage of the employee. In support of such proposition he cites A.R.S. § 23–1041(D) wherein the term "monthly wage" is defined. That section provides:

"D. The term 'monthly wage' means the average wage paid during and over the month in which the employee is killed or injured."

He therefore argues that the Commission is compelled to accept the average wage paid during and over the month in which the employee is injured as the average monthly wage. In arriving at the average wage paid "during and over the month in which the employee is * * * injured", the actual wages received during the preceding thirty days would be divided by the number of days actually worked and the resultant figure multiplied by the average number of working days in a month.

This Court comprehendingly construed A.R.S. § 23–1041(D) in Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217 (1949). Therein we stated:

" * * * the legislature defined the term 'monthly wage' to mean 'the average wage paid during and over the month in which such employee is

killed or injured,' meaning that the aggregate wage earned during the month immediately preceding his injury would have to be divided by the number of days actually worked to get the average daily wage and then multiply said average by the number of days he would ordinarily work per month, thus ascertaining the monthly wage.

"This sentence [Subsection D] * * * can only apply where the employee has worked for a period of less than thirty days. * * *" 69 Ariz. 176, 211 P.2d 228.

Accordingly, such section would have no application to a situation such as that presented by the instant case wherein the employee has worked continuously for a period of thirty days or more.

In computing the average wage of an injured employee the period of time over which the earnings are to be computed is generally specified by statute. Most statutes use the words "average weekly wage" as the basis for computation and prescribe the formula by which the average weekly wage is to be determined. The computation of the average weekly wage is frequently based upon actual wages during the preceding year, if the employee's employment has been substantially continuous. Larson, Workmen's Compensation Law § 60.00. However, under our Workmen's Compen-

sation Act the average monthly wage must be determined, not the average weekly wage. In addition, unlike most statutes, our statute fails to specify the period of time over which the earnings are to be computed. This Court has said that where the employee has been employed for more than thirty days at the time of his injury or death the "average monthly wage" may not be ascertained from wages earned in a single month. Steward v. Industrial Commission, supra; Kennecott Copper Corp. v. Industrial Commission, 61 Ariz. 382, 149 P.2d 839 (1944).

In the instant case the Commission, in order to ascertain the petitioner's "average monthly wage", divided by twelve the actual total earnings of the petitioner during the twelve-month period prior to his injury. In the absence of some other statutory direction for computing the "average monthly wage", we cannot say that the method adopted by the Commission constituted error.

However, the Commission did err in computing the petitioner's average monthly wage in including the two-month period during which time petitioner did not work due to a shutdown by his employer. In including such period the Commission stated it was a factor to be considered since it clearly appeared from the disinterested testimony that the business was seasonal or intermittent. Such testimony

was given by Mavis Gilbert, a former employer of petitioner. However, he testified that weather conditions in Arizona permitted work the year-round even though one day a week would be lost for one summer month and two days a week would be lost for two winter months. He testified, with reference to a period during which petitioner worked for him, as follows:

"Q [By the Referee] How long did you say he worked for you, from April 1957, July '58?

"A Approximately 15 months.

"Q Did you have work continuously during that period or were there layoffs?

"A There were short layoffs, none over a week.

"Q How many of them?

"A Oh, during the summer months I would say we would lose an average a day a week for one month, on account of rain, rain in the summer. And in the winter we might lose two days a week for a period of two months on account of the snows and rains."

And in answer to the question of whether weather conditions in Arizona permitted him to work the year-round he stated: "They have in the past."

◼ From the evidence appearing in the record it cannot be said that petitioner's employment was seasonal. Seasonal employment refers to occupations which can be carried on only at certain seasons or fairly definite portions of the year. It does not include such occupations as may be carried on throughout the entire year. Hiestand v. Ristau, 135 Neb. 881, 284 N.W. 756 (1939); Pryor v. Brickley, 1 Terry 5, 40 Del. 5, 5 A.2d 242 (1939).

◼ The Commission, in computing petitioner's average monthly wage, could properly take into consideration the fact that a usual incident of petitioner's employment was that he would lose time due to weather conditions. However, petitioner's loss of work from February 7, 1959 to April 5, 1959 was not occasioned by weather conditions but was due to a shutdown by his employer. Petitioner testified that during such period he could have worked had his employer worked. He testified to wit:

"Q [By petitioner's attorney] * * * During the period from February 7th, 1959, to April 5th, 1959 with Henning and Turnbull, when they weren't working, could you have worked in the forests at that time?

"A Yes, I could have.

* * * * * *

"Q [By the Referee] But Henning and Turnbull did not have any work going on; isn't that right?

"A That's right.

"Q Did anybody else have any logging going on then?

"A Yes, I believe Mavis here was working then.

* * * * * *

"Q It was the choice of the employer that closed down the job during that time; is that your testimony?

"A Yes.

"Q Not your choice?

"A Yes, that's right."

In addition, Mavis Gilbert testified:

"Q Did you have continuous employment after July 1958 [the date petitioner went to work for Henning & Turnbull]?

"A Yes.

"Q Do you know why Jim went to work for this other outfit then?

"A Well, I think he figured he could make more money working for them was the reason. [Mr. Gilbert had stated earlier that weather conditions permitted a worker to average four days a week during the year and that a top sawyer such as petitioner could earn $30 a day for four days a week throughout the year working for him.]

"Q You were not dissatisfied with him in any way?

"A No.

"Q Are you still engaged in the logging business?

"A Yes, sir."

■ Where an injured employee loses time during the previous year for reasons over which he has no control, and where the loss of time is not a common and ordinary incident to the particular employment, such time should be omitted in computing his average monthly wage. Hartley v. Liberty Mutual Insurance Co., 197 Tenn. 504, 276 S.W.2d 1 (1954). Accordingly, the Commission should have excluded the two months during which petitioner received no wages due to a shutdown by his employer in computing his average monthly wage.

■ The Commission properly deducted the saw rental in computing petitioner's average monthly wage since compensation is based upon the wage under the contract of hire. Accordingly, all wages earned under such contract during the applicable period should be included.

The award is set aside.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and LOCKWOOD, JJ., concur.