529 P.2d 732

Reynaldo DOMINQUEZ, Petitioner,

v.

The INDUSTRIAL COMMISSION of
Arizona, Respondent,

John Tyner, Respondent Employer,

State Compensation Fund, Respond-
ent Carrier.

No. 1 CA–IC 1094.

Court of Appeals of Arizona,
Division 1,
Department A.

Dec. 19, 1974.

Gorey & Ely by Joseph M. Bettini, Walter R. Ulman, Phoenix, for petitioner.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Robert K. Park, Chief Counsel, State Compensation Fund by Courtney L. Varner, James B. Long, Phoenix, for respondents employer and carrier.

## OPINION

OGG, Judge.

This appeal squarely places at issue the proper method of determining the average monthly wage of an injured seasonal worker. Moreover, this court must determine whether the hearing officer of the Industrial Commission erred by using a twelve month period as the divisor in his calculations of average monthly wage when the worker was only afforded a five month employment period.

Reynaldo Dominquez is a fruit picker. On February 3, 1973, Dominquez was injured while picking fruit when an aluminum ladder upon which he was standing came in contact with electrical wires. This event occurred on Dominquez' first day of work. On April 6, 1973, the Commission approved the respondent carrier's average monthly wage calculation. The method used by the hearing officer is reflected in Finding Fourteen (14) of the Decision Upon Review:

> "Wage pattern of other employees of the defendant employer for the period from January 7, 1973 through February 7, 1973: Employee number one, $408.00; employee number two, $412.00; total earnings of both other employees equaling $820.00 divided by 64 (the total number of days both employees worked) resulting in a daily rate of $12.81 multiplied by 30.416 (the number of days in a month) which would result in a monthly wage of $389.63.

> However, because work was available to the applicant and to the similar employees for no more than 5 months out of the year, the sum of $389.63 must be multiplied by 5 which would result in yearly earnings of $1,948.15 divided by 12 months, resulting in an average monthly wage of $162.35."

Petitioner contends that the method used was correct in arriving at a monthly wage of $389.63; however, he also contends that the hearing officer should have stopped at that point rather than multiplying the $389.63 by the number of months in which work was available (5) and then dividing by the number of months in a year (12) to arrive at an average monthly wage of $162.35.

We find that the monthly wage of $389.63 was properly calculated. Vinyard v. Industrial Commission, 106 Ariz. 164, 472 P.2d 33 (1970). This finding does not resolve the issue of whether the use of 12 months as the denominator in the calculation of average monthly wage was proper. Section 23–1041(B), ARS, provides that:

"B. If the injured or killed employee has not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such amount as, having regard to the previous wage of the injured employee or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident."

Since petitioner was injured during his first day of employment, subsection B is the cornerstone upon which a compensation determination is made. Subsection B does not distinguish between the fulltime employee and the seasonal worker. There is no indication that different methods are to be used, depending upon the employment period. The only requirement that must prevail to fall within subsection B is that the "employee has not been continuously employed for the period of thirty days immediately preceding the injury . . ." From this observation we can only conclude that if variations of average wage calculations exist, they arise from an inherent discretion in the Industrial Commission which has been sustained by the courts of this State. Indeed, it has been continuously noted that the Arizona statute is devoid of formulas to which the Commission must adhere and that the intent of the legislature was to vest the Commission with discretion and flexibility in arriving at a proper award. Gene Autry Productions v. Industrial Commission, 67 Ariz. 290, 195 P.2d 143 (1948); Floyd Hartshorn Plastering Co. v. Industrial Commis-

sion, 16 Ariz.App. 498, 504, 494 P.2d 398, 404 (1972).

The scope of this discretion is unclear in light of Arizona case law. In a discussion of § 23–1041(B), the Arizona Supreme Court observed that:

"[t]he mandate of the statute is clear. If an employee has not worked for one full month, his average monthly wage for the purpose of computing his compensation is that of similar employees in the same or neighboring locality . . . There is, therefore, no need to go back one year . . . or five years . . . to ascertain the employee's average monthly wage." Vinyard v. Industrial Commission, 106 Ariz. 164, 165, 472 P.2d 33, 34 (1970).

If the discretion of the Commission is limited in this determination, then when does it exist? We conclude that it exists in determining the "average monthly wage [which] reasonably represents the monthly earning capacity of the employee."

It must be noted that the phrase "average monthly wage" has two very different meanings. Section 23–1041(B) says that an amount which represents the monthly earning capacity of the employee on the job in which he is engaged at the time of injury must be determined. For the purpose of this analysis that amount will be labeled "monthly wage." The hearing officer, in this case, determined that the "monthly wage" was $389.63. This figure was computed by comparison of the wages of persons in a similar employment in the same locality. This method was correct and in accordance with § 23–1041(B). It is clear that this calculation is not the end of the process. In the case of the seasonal worker the hearing officer must then decide whether the $389.63 "monthly wage" should be awarded as the average monthly wage or whether further calculation is necessary to arrive at a different average monthly wage. Dominquez, if not injured, could have worked for a total of 5 months. The hearing officer multiplied the "monthly wage" ($389.63) by the

potential duration of employment (5 months). He then divided the product by 12 months, arriving at an "average monthly wage" of $162.35. There is a substantial difference between these figures, yet each potentially represents an "average monthly wage."

It appears, therefore, that there are actually two determinations made in the case of the seasonal worker; the "monthly wage" and the "average monthly wage." This distinction is elusive; however, this court has attempted to delineate the distinction in Floyd Hartshorn Plastering Co. v. Industrial Commission, supra. While Hartshorn does not explicitly address the distinction between monthly wage and average monthly wage in the context of the seasonal worker, the underlying concept embraced is clear:

"[t]his Court recognizes that there might exist circumstances which would require the Commission to base a claimant's average monthly wage upon what he *might have earned* rather than upon his actual earnings. A good example of such circumstances are those described in subsection B of A.R.S. § 23–1041 where the employee has not been continuously employed for the period of thirty days immediately preceding his injury. Another example is found in situations where, even though the claimant has been continuously employed for the preceding thirty days, his employment has been intermittent or affected by seasonal factors. . . . In these cases the consideration of what the claimant *'might have earned' is accomplished indirectly by omitting from consideration the intermediate period or periods of unemployment."* 16 Ariz.App. at 505, 494 P. 2d at 405. [Emphasis added]

When the court speaks of earning capacity as being determined by the indirect method of omitting periods of unemployment, it is really speaking of an average monthly wage. The court in Hartshorn does not address the first calculation; i.e., monthly wage, but rather the average

monthly wage—that amount which represents an employee's earning capacity. This distinction in no way offends the language of § 23–1041(B); it merely interprets it. Concluding, as we do, that the hearing officer's discretion ultimately rests in the determination of "average monthly wage," we are compelled to clarify the limitations, if any, upon that discretion.

Some confusion arises regarding the breadth of discretion afforded to a hearing officer in his determination of the average monthly wage of a seasonal worker; the doubt originates in the dicta of several Arizona cases.

In Pettis v. Industrial Commission, 91 Ariz. 298, 372 P.2d 72 (1962), a timber cutter protested an award which had been computed over a 12 month period when he had worked only 10 months due to a shutdown by his employer. The Arizona Supreme Court set aside the award and held that the average monthly wage should be determined on a 10 month basis rather than on the 12 month period used by the Commission. In so doing, the Court stated that petitioner's work was not seasonal. The inference arising from Pettis is that, if the work had been seasonal, the divisor would have been properly calculated at 12 months. Consequently, while the period of time in which employment was available was used as the denominator, the Court indicated that it the occupation was in fact seasonal the award would be properly computed over a year's period.

In Powell v. Industrial Commission, 104 Ariz. 257, 451 P.2d 37 (1969), the Supreme Court of Arizona was forced to decide if, in the case of a teacher who was under a 9 month contract, the proper divisor in establishing an average monthly wage was 9 months, the period of the contract, or 12 months, a year's period. The Court held that the average monthly wage of the teacher was properly determined by dividing the amount of the contract by 9 rather than 12. In so doing the Court set aside an order of the Industrial Commission which had based the use of a 12 month pe-

riod on the conclusion that the employment was seasonal. The inference arising from the Supreme Court opinion is that the contract, under which the teacher was employed, took the case outside the formula for seasonal employees. In Powell, as in Pettis, one comes away with the inclination that the only method of calculating the average monthly wage of the seasonal employee is to calculate what has heretofore been labeled the monthly wage of the employee, multiply that amount by the number of months' work available to the employee and then divide by 12 months.

This inference regarding an established formula for the seasonal employee is further enforced by the Supreme Court's dicta in Steward v. Industrial Commission, 69 Ariz. 159, 211 P.2d 217 (1949). In a discussion of the ramifications of Jackson v. Del E. Webb Construction Co., 61 Ariz. 391, 149 P.2d 685 (1944), the Supreme Court stated:

"Let us further illustrate the absurdity to which the construction in the Jackson case leads. Let us take the case of a cantaloupe packer who make [sic] $50 to $60 per day during the cantaloupe season, or for convenience, let us say that he makes $1,000 a month during that period. He is what is known as a seasonal or intermittent worker and works approximately three to four months per year in this employment, but let us again for convenience assume that he makes $4,000 a year. If he has been employed less than a thirty day period immediately prior to his injury and is injured on the 29th day of his employment while packing cantaloupes, his compensation under the rule in the Jackson case, supra, would be based upon an average monthly wage of $1,000, whereas if he happened to be injured in any thirty day period of his employment subsequent thereto the average monthly wage upon which his compensation must be based would be ¹⁄₁₂ of $4,000 or $350 per month. Brisendine v. Skousen Brothers, supra, 48 Ariz. 416, 62 P.2d 326. The conclusion reached in

the Jackson case, supra, therefore is illogical, unjust, and leads to absurdity." 69 Ariz. at 178–179, 211 P.2d at 230.

This example leaves the definite impression that the method espoused above is to be used in the case of the seasonal worker who has not been employed for more than thirty days prior to his injury.

■ We have scrutinized the cases presented above and find no rational basis upon which to distinguish the determination of the average monthly wage of a seasonal worker from that of the timber cutter in Pettis or the teacher in Powell. This is not to say that using 12 months as the divisor in the formula is necessarily erroneous; we only point out that the hearing officer, in his discretion, *may* use a lesser period of time as the divisor—the potential duration of the seasonal worker's employment. This conclusion, in our opinion, is not inconsistent with those inferences gleaned from Supreme Court dicta.

In Pettis, supra, the Supreme Court addressed the nature of the discretion vested in the Commission. Directing its remarks to § 23–1041, the Court stated that:

"    .    .    .    unlike most statutes, our statute fails to specify the period of time over which the earnings are to be computed    .    .    .

In the instant case the Commission in order to ascertain the petitioner's 'average monthly wage', divided by twelve the actual total earnings of the petitioner during the twelve-month period prior to his injury. In the absence of some other statutory direction for computing the 'average monthly wage', we cannot say that the method adopted by the Commission constituted error." 91 Ariz. at 301, 372 P.2d at 74.

This passage clearly recognizes discretion in the Commission to devise its own formula. The statute does not distinguish between a formula for a seasonal worker and one for the fulltime employee; there is no formula present. We do not construe Pettis as promulgating a steadfast stand-

ard; we interpret it as a recognition of discretion in the Commission but disagreeing with the application of that discretion to the facts of the case. Consequently, we find nothing in Pettis which directs the Commission to utilize a specialized standard for the seasonal worker.

Powell, supra, also affirmed the recognition of discretion in the Commission "in computing the decisive average." While Powell implies that if it had been determined that the teacher was a seasonal worker, a 12 month divisor would have been appropriate, the logic of Powell is applicable to the seasonal worker. The Supreme Court in Powell discusses the reasons it would be inequitable to divide the contract amount by 12 instead of the nine month period which the contract covered:

"It is evident that in Arizona, as in California, the purpose of an award is not to make the employee whole for the loss which he has suffered but to at least take case of the major portion of the loss during the disability. If a teacher with a contract similar to that of the instant case were injured at the beginning of the school term; namely, the 1st of September, and then adjudged to be able to resume normal work on June 1st, and the average wage was made on a 12-month basis on the theory that the employment was in fact 'seasonal', there would have been paid industrial insurance for the total sum of $9,039.50 and yet, because of the division by twelve she would only be receiving three-fourths of the benefits for a year." 104 Ariz. at 262, 451 P.2d at 42.

This persuasive rationale is applicable to a seasonal worker. Assume that work picking citrus was available to an employee for five months. Industrial insurance would be paid on that basis. If the employee's average monthly wage is calculated on a 12 month basis rather than a 5 month basis, and if the employee is injured on the first day of employment and recovers on the last day, the employee would receive only two-fifths of the benefits for a year.

The Court in Powell continues its analysis in terms of the rate fixed and assessed against the employer.

"[6] Therefore, to fix the rate of pay on a 12-month basis would be including three months for which the petitioner is not covered under the contract and under which she could not recover industrial insurance because there would not be an accident which was an incident of employment, there being no employment during this period. Hence it would be inequitable for the school district to have to pay premiums on this 3-month period for which no accident could occur as she was not employed for this period under her contract. The Industrial Commission, however, evidently fixes rates on the entire amount of the contract which, in the instant case, was approximately for a 9-month period. The Industrial Commission likewise should fix the average monthly wage on the basis of the 9-month contractual period of employment. The Commission, therefore, had full authority to fix a rate of compensation for payment on a monthly basis as provided in a contract, as in the instant case." 104 Ariz. at 263, 451 P.2d at 43.

If this analysis is sound we can see no reason why it is not equally applicable to a seasonal worker. There is no need, however, for this court to delve deeper into the above passage since, as of 1969, the Industrial Commission joined the National Council on Compensation Insurance. The Council is responsible for the determination of rates to be applied to employees. There is no issue before this court involving the fixation of rates and we therefore abstain from a discussion thereof.

Steward, supra, hypothesizes an example which involves a cantaloupe packer who is injured less than thirty days after his commencement of employment.[1] The impres-

---

1. See p. 736, supra.

sion which lingers after a reading of the example is that the hearing officer *must* follow the method which in fact was followed in the calculation of Dominquez' average monthly wage. Such an interpretation is not required in view of the context in which the example arose. The example in Steward was used to demonstrate the untenability of another case—Jackson, supra. The issue in Jackson was not the same as the question raised here. The issue resolved in Jackson was the proper method of determining the average monthly wage of an employee who had been engaged in intermittent employment for less than thirty days. That case arose under § 56–952, Ariz.Code Ann.1939. From that statute it appeared that there were two alternative methods of arriving at average monthly wage: "(1) having regard to the previous wage of the injured employee, or (2) having regard to the previous wage of the other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality." The hearing officer chose the first alternative and he:

> "calculated petitioner's average monthly wage by dividing the total amount of wages received by petitioner for the 8 days [$62.44] by 8 and multiplying the result by 30, arriving at a figure of $234. . . . " 61 Ariz. at 393, 149 P.2d at 686.

In Steward the Court considered the method used in Jackson and stated that:

> "this court in the Jackson case, supra, was clearly in error in interpreting the language here under consideration to afford two alternative methods of computing compensation for an injured employee based upon divergent mathematical premises, where, by the use of one method the 'average monthly wage' of the injured person would be two or three times what it would be by the use of the other method, and in its failure to consider other factors including whether the employment was continuous or intermittent." 69 Ariz. at 178, 211 P.2d at 230.

The question in Jackson, therefore, which prompted the hypothetical in Steward was which of the two alternative methods was proper for the determination of monthly wage. In the case before us it is imperative to note that there is no dispute about the method used to arrive at the monthly wage of $389.63. This figure was calculated by the method approved of in Steward and Vinyard. Steward, in fact, states that the proper method to calculate the average monthly wage is not "previous wage" but the previous wage of others in the same or most similar class in the same or most similar employment in the same or neighboring locality. If this was the end of the Steward hypothetical, no confusion would exist; we would merely conclude that in the instance of a continuous worker (not a seasonal worker, as in this case), who is employed for less than a month, the proper method of calculating average monthly wage is by a comparison of similar workers in similar employment in the same or similar locality. However, the hypothetical in Steward went on to demonstrate the absurdity of Jackson by calculating the results if the cantaloupe packer had been employed for more than thirty days. Specifically, the court stated that:

> "if he [had] been employed less than a thirty day period immediately prior to his injury and is injured on the 29th day . . . his compensation under the rule in the Jackson case . . . would 'be based upon an average monthly wage of $1,000, whereas if he happened to be injured in any thirty day period of his employment subsequent thereto the average monthly wage upon which his compensation must be based would be 1/12 of $4,000 or $350 per month. Brisendine v. Skousen Brothers, supra." 69 Ariz. at 179, 211 P.2d at 230.

The reference to Brisendine v. Skousen Brothers, 48 Ariz. 416, 62 P.2d 326 (1936), requires this court to examine it and determine if in the context of the seasonal worker the conclusion of the Supreme Court of Arizona is sound and, if so, what effect it has upon petitioner Dominquez.

Brisendine was a truck driver employed by Skousen Brothers. His hourly wage was $.6875 per hour. Brisendine's work was irregular in nature; he did not work a fixed number of hours per week nor per month but rather worked as needed. The Commission awarded the employee a sum of money which was based upon his actual earnings for a thirty day period—$55.69. Brisendine's contention was that the final award should have been based upon what he could have earned if he had worked a forty hour week, or $110 per month.

Several observations will make the court's statement in Brisendine clearer. First, Brisendine was not a seasonal worker, he was an intermittent worker. This is significant for the intermittent worker, if compensated on the basis of what he could have earned, would be awarded on a basis other than that in which he was engaged. In effect he would be compensated for time which he traditionally did not work. This is different from the seasonal worker who works fulltime for the duration of the seasonal employment. Second, it is not clear that the seasonal worker hypothesized in Steward would receive compensation different from that which was characterized as absurd if Brisendine is followed.

In a discussion of the worker who is injured before completion of thirty days' employment, the court, in Brisendine, stated that:

"[i]t frequently appeared in claims for compensation that the workman had been employed only a few days or, at times, a few hours before the accident occurred, and the wages which he had actually earned during the month in which he was injured were very meager, amounting to but a few dollars. The compensation, if calculated on that basis, was necessarily merely nominal. The Legislature, realizing the injustice of such a situation, in 1933 amended the section by adding the third sentence above set forth, which undoubtedly was intended to meet situations of the kind just described. It provided, in effect, that if an employee had not been continuously employed for the month preceding the injury, the wage basis upon which compensation should be calculated should be the amount which he *would* have received during the month if he had been continuously employed. The question then arises: What is meant by 'continuously employed' as used in the sentence?" 48 Ariz. at 419, 62 P.2d at 327–328.

■ This passage points out that in the case of a worker, seasonal or not, who is injured prior to the completion of thirty days of employment, the proper method of calculating earning capacity is represented by what the worker would have earned if he had completed the work afforded to him. Consequently, the cantaloupe packer in Steward would be compensated on the basis of what he would have earned. In the Steward example, would not that compensation be $1,000 a month, an amount which is characterized as absurd? Herein is the core of the confusion. What is the earning capacity of a seasonal worker? Brisendine quotes approvingly from State Road Commission v. Industrial Commission, 56 Utah 252, 190 P. 544 (1920). The Utah court, attempting to focus upon earning capacity, stated that:

"[i]f by 'earning capacity' is meant what the employee could have earned as the business was carried on, including the element of discontinuousness incident to the nature of the employment, we have little or no fault to find with the contention, but if by 'earning capacity' is meant what the employee might earn on the assumption that he worked full time, or for three hundred days in the year, we cannot agree with the contention as applied to a case of this kind." 56 Utah at 263, 190 P. at 548.

In the case of Brisendine, in which this quote found applicability, it is a logical analysis of earning capacity. Brisendine was not employed on a regular forty hour week basis. The nature of his employment included an element of discontinuousness. We cannot say that the seasonal worker

586

necessarily falls within that category. The seasonal work afforded to an employee is not discontinuous. Dominquez was afforded 5 months' work on a fulltime basis. The problem arises in deciding how to handle the remaining 7 months. It is in this regard that we believe the hearing officer's discretion must prevail.

If a seasonal worker has but one 5 month job over a 12 month period, then using 5 months as a divisor in calculating an average monthly wage would result in a windfall. For instance, if Dominquez' prior work record indicated that he had earned approximately $1,700 in prior work years, then this may be evidence that he traditionally worked but 5 months a year. In that event we believe that it would be sound and proper for the hearing officer to follow the procedures which were followed here. However, if petitioner's prior work record indicated that he had continuously been employed for 12 months of the year in different seasonal jobs, then this also should be considered by the hearing officer. For instance, if the evidence should show that petitioner had earned approximately $4,000 per annum for the past several years, as was the case here, an award of $389.63 each month may reflect his earning capacity. The award in the present case of $162.35 does not reflect the earning capacity of the injured employee, if in fact he had been earning more during prior years. These are factors which should be considered by the hearing officer in arriving at a proper award. If these factors are properly utilized by a hearing officer, injustices will be avoided at both ends of the spectrum. If the employee does not historically work on a year round basis, then the award would be so calculated and no windfall would result. On the other hand, if his prior record indicates a higher yearly earning capacity, this would be considered and might result in a higher award. In this fashion an award can be tailored to the employee's particular situation and consequently abide by the spirit of the Act.

In the context of the facts of the case before us, let us assume work records of prior years indicated that the injured employee had traditionally worked 8 months a year. In that case the hearing officer might well decide that the average monthly wage should be calculated in the following manner: After arriving at a "monthly wage" of $389.63, he might multiply by 8 months and then divide by 12 months. In this fashion he would arrive at an equitable "average monthly wage."

Certainly there are many examples which this court could promulgate and then propose corresponding methods of calculation; however, that is not our purpose. We illustrate by example, only so that it is clear that the hearing officer can properly consider other factors in arriving at a final award.

■■ It should be understood that this analysis does not approve of the combination of wages of prior years for determining the "monthly wage" of a seasonal employee who is injured prior to the completion of thirty days' employment. The hearing officer, in that regard, is bound by § 23–1041(B). His discretion is properly exercised only after the initial determination of "monthly wage" is made. We are aware that exercise of discretion by the hearing officer does not lend itself to precise calculations; however, as noted before, § 23–1041(B) is devoid of rigid formulas in order to allow flexibility. We are of the opinion that recognition of the hearing officer's discretion will allow him to arrive at "the basic unit of compensation which is equitable in the respective case." Powell v. Industrial Commission, 104 Ariz. 257, 260, 451 P.2d 37, 40 (1969).

This holding is consistent with Mickelson v. Industrial Commission, 7 Ariz.App. 182, 437 P.2d 666 (1968). Mickelson, after attempting to rationalize an inconsistent history of cases, held that our statute:

" . . . permits us to consider only the income of the employee which he re-

ceived from the particular employer at the time of the injury." *7 Ariz.App. at 192, 437 P.2d at 676.*

■ This case in no way alters the thrust of Mickelson. The monthly wage is *still to be calculated from* the income of the employee in the employment in which he was engaged at the time of injury. The guideline which is to be gleaned from this court's discussion is the revestment of the hearing officer with that discretion which has been traditionally recognized by the courts of Arizona.

■ After a review of existing Arizona law we are of the opinion that a hearing officer of the Industrial Commission might well conclude that he is empowered to follow but one formula in the calculation of a seasonal worker's average monthly wage. For the reasons stated herein we believe the hearing officer's discretion has in no way been so limited or constrained.

It is interesting to note that the determination of average monthly wage of $162.35 came about as a result of a modification of a prior award. The hearing officer, in arriving at the prior award, believed the proper figure to be:

"  .  .  .  properly represented by the monthly sum of $333.33 (computed by dividing the sum of $4,000 per year by the figure 12, the number of months in a year)."

We recognize that this method of calculation was erroneous. However, it indicates that the revised award of $162.35 may have been influenced by an understandable misinterpretation of the Arizona case law.

■ From the record before us it appears that the hearing officer correctly fixed the monthly wage at $389.63. Section 23–1041(B), ARS. Moreover, this court is unable to say as a matter of law that the award of $162.35 was erroneous. However, it is clear that the hearing officer erred in that he did not consider the petitioner's past work record or other relevant factors in arriving at the final calculation of petitioner's average monthly wage. The award is set aside so that it may be reconsidered in light of the guidelines set forth in this opinion.

DONOFRIO, P. J., and STEVENS, J., concur.