**532 P.2d 163**

**Glenn A. MILLER, Petitioner,**

**v.**

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Phelps Dodge Corporation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. I CA–IC 1060.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 27, 1975.

Rehearing Denied March 28, 1975.

Review Granted April 22, 1975.

**222**

---

Davis & Eppstein by Robert W. Eppstein, Tucson, for petitioner.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Evans, Kitchel & Jenckes, P. C. by Leon D. Bess and James G. Speer, Phoenix, for respondent employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent carrier.

## OPINION

NELSON, Presiding Judge.

This appeal challenges an award of the Industrial Commission (Commission) which set the petitioner's average monthly wage at $212.50.

Petitioner, Glenn A. Miller (Miller), was a geology student at the University of Arizona. During the summer of 1969, he was employed by respondent employer. He returned to school and after the 1969–1970 school year, he once again took summer employment with respondent employer. It was understood that this employment was only for the summer, approximately three months. Miller was assigned to work as a field geologist in Alaska and was compensated by an actual wage of $850.00 per month. During the first thirty days of this summer employment, Miller suffered industrially-related injuries to both knees. Although he was unable to carry out the specific work for which he had been employed, he performed other types of work without suffering any loss or reduction in his monthly wage. At the end of the summer he returned to the University of Arizona as a full-time student. His physical condition was ultimately determined to be stationary on February 8, 1972, with a 10% general disability.

After a formal hearing, the hearing officer entered his decision August 2, 1973. The hearing officer set Miller's average monthly wage at $212.50. He arrived at this figure by multiplying $850.00 per month by the duration of Miller's summer employment (3 months) and then by dividing by the number of months in a year (12). Miller instituted a timely protest of the hearing officer's determination of his average monthly wage, and on September 19, 1973, the Commission issued a Decision on Review affirming the findings of the hearing officer. Miller filed a Petition for Writ of Certiorari which was granted. On review we affirm the Commission's award.

Miller's sole contention on appeal is that when a student who is hired for temporary summer employment for a specific number of months at a specific wage per month is injured in the course of that temporary employment, his average monthly wage should be the same as the amount he was paid each month. Reduced to more general terms, the issue involved herein is whether the hearing officer applied the proper method of determining the average monthly wage of an injured seasonal worker.

The proper method of determining the average monthly wage of an injured seasonal worker has been extensively analyzed in Dominquez v. The Industrial Commission of Arizona, 22 Ariz.App. 578, 529 P.

2d 732 (1974), recently issued by this Court. In that opinion authored by Judge Ogg the award of the Commission which established the average monthly wage of an injured seasonal farm laborer was set aside. The *Dominquez* case concerns the correct method of setting the average monthly wage of a worker who traditionally may not have worked twelve months out of the year, and who had worked less than thirty days for that particular employer, prior to injury. The hearing officer in *Dominquez* believed he was bound by case law to multiply the monthly wage by the number of months of the employment opportunity, and divide by twelve, to establish average monthly wage. The critical holding of the *Dominquez* case is that a hearing officer is not bound by a required formula for determining "average monthly wage"; a hearing officer may use his discretion to determine whether "average monthly wage" should be the same as "monthly wage", or whether, considering other factors in addition to "monthly wage", the "average monthly wage" should be different. The Court demonstrates the effect of its holding in the following analysis:

> If a seasonal worker has but one 5 month job over a 12 month period, then using 5 months as a divisor in calculating an average monthly wage would result in a windfall. For instance, if Dominquez' prior work record indicated that he had earned approximately $1,700 in prior work years, then his may be evidence that he traditionally worked but 5 months a year. In that event we believe that it would be sound and proper for the hearing officer to follow the procedures which were followed here. However, if petitioner's prior work record indicated that he had continuously been employed for 12 months of the year in different seasonal jobs, then this also should be considered by the hearing officer. For instance, if the evidence should show the petitioner had earned approximately $4,000 per annum for the past several years, as was the case here, an

award of $389.63 each month may reflect his earning capacity. The award in the present case of $162.35 does not reflect the earning capacity of the injured employee, if in fact he had been earning more during prior years. These are factors which should be considered by the hearing officer in arriving at a proper award. If these factors are properly utilized by a hearing officer, injustices will be avoided at both ends of the spectrum. If the employee does not historically work on a year round basis, then the award would be so calculated and no windfall would result. On the other hand, if his prior record indicates a higher yearly earning capacity, this would be considered and might result in a higher award. In this fashion an award can be tailored to the employee's particular situation and consequently abide by the spirit of the Act.

In the context of the facts of the case before us, let us assume work records of prior years indicated that the injured employee had traditionally worked 8 months a year. In that case the hearing officer might well decide that the average monthly wage should be calculated in the following manner: After arriving at a "monthly wage" of $389.63, he might multiply by 8 months and then divide by 12 months. In this fashion he would arrive at an equitable "average monthly wage."

Certainly there are many examples which this court could promulgate and then propose corresponding methods of calculation; however, that is not our purpose. We illustrate by example, only so that it is clear that the hearing officer can properly consider other factors in arriving at a final award.

It should be understood that this analysis does not approve of the combination of wages of prior years for determining the "monthly wage" of a seasonal employee who is injured prior to the completion of thirty days' employment. The hearing officer, in that regard, is bound

by § 23–1041(B). His discretion is properly exercised only after the initial determination of "monthly wage" is made. We are aware that exercise of discretion by the hearing officer does not lend itself to precise calculations; however, as noted before, § 23–1041(B) is devoid of rigid formulas in order to allow flexibility. We are of the opinion that recognition of the hearing officer's discretion will allow him to arrive at "the basic unit of compensation which is equitable in the respective case." 22 Ariz.App. at p. 586, 529 P.2d at p. 740.

Ordering the award set aside, we conclude by saying: "[I]t is clear that the hearing officer erred in that he did not consider the petitioner's past work record or other relevant factors in arriving at the final calculation of petitioner's average monthly wage." Id. at p. 587, 529 P.2d at p. 741.

Miller was injured within the first thirty days of his employment. Neither party contests the appropriateness of the hearing officer's calculation of Miller's "monthly wage" at $850.00. See Vinyard v. The Industrial Commission of Arizona, 106 Ariz. 164, 472 P.2d 33 (1970). The question before us then requires a determination of whether the hearing officer's calculation of Miller's "average monthly wage" can be sustained in light of the holding in Dominquez v. The Industrial Commission of Arizona, supra.

Miller contends that an evaluation of other factors inherent in his employment situation necessitates a conclusion that his "average monthly wage" should be the same as his "monthly wage". He asserts that the hearing officer did not consider these "other factors", therefore we should set aside the award of the Commission and order it to be reconsidered in light of Dominquez and certain other guidelines he requests us to promulgate.

Miller argues that a review of the work history of a full-time student is of no value in computing "average monthly wage" because he is continually making himself a potentially more valuable adult employee. Such a situation is distinguishable, he asserts, from the adult seasonal worker in Dominquez for whom a review of work history may well reveal the amount of work that such a seasonal employee traditionally performed in a year. Consequently, Miller argues that because there can be no traditional work history in the case of a full-time student, his "average monthly wage" should be considered to be the same as his "monthly wage" unless other factors should indicate a difference. We agree that this is precisely the kind of "other factor" referred to in Dominquez which must be considered by a hearing officer in the computation of average monthly wage. However, for this Court to begin in this case to identify every factor and to prescribe the impact each is to have in each case would unreasonably limit, if not abolish, the discretion of the hearing officer and cloud the question that Dominquez has already clarified.

Our opinion is that the hearing officer's computation of Miller's average monthly wage and the Commission's award thereof can be sustained in light of the holding in Dominquez v. The Industrial Commission of Arizona, supra. On review we will not disturb the findings of the Industrial Commission where they are reasonably supported by the evidence. Carranza v. The Industrial Commission of Arizona, 22 Ariz. App. 547, 529 P.2d 259 (1974); Brown v. The Industrial Commission of Arizona, 20 Ariz.App. 486, 513 P.2d 1369 (1973); Spears v. The Industrial Commission of Arizona, 20 Ariz.App. 406, 513 P.2d 695 (1973). The record and findings before us evidence the great depths to which the hearing officer went to acquire detailed information concerning Miller's employment history, the methods by which he had been compensated, how much he had been compensated, and the nature of his employment vis-a-vis his status as a full-time student. Inquiries directed at elucidating such pertinent facts fall squarely within the prescription of Dominquez. Unlike the hearing officer in the Dominquez case, the hearing

officer here interpreted the prior court decisions, as did Judge Ogg in *Dominquez,* as not requiring a rigid formula.

Under the circumstances of this case and upon review of the record before us, we are compelled to conclude that the hearing officer adequately considered all the relevant factors necessary to compute Miller's average monthly wage as he did.

The award of the Industrial Commission is affirmed.

STEVENS and WREN, JJ., concur.