546 P.2d 19

**Glenn A. MILLER, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Phelps Dodge Corporation, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 12065–PR.**

Supreme Court of Arizona,
In Banc.

Feb. 9, 1976.

Rehearing Denied March 16, 1976.

Davis & Eppstein by Robert W. Eppstein, Tucson, for petitioner.

Edward F. Cummerford, Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Evans, Kitchel & Jenckes, P. C., by Leon D. Bess and James G. Speer, Phoenix, for respondent Employer.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, for respondent Carrier.

STRUCKMEYER, Vice Chief Justice.

This Writ of Certiorari is to review the lawfulness of an award of the Industrial Commission of Arizona. Petitioner was injured while in the course of his employment with Phelps Dodge Corporation. After a hearing, a decision was entered fixing Petitioner's average monthly wage as $212.50. A timely protest was filed and a decision on review was issued without change. The Court of Appeals affirmed, 23 Ariz.App. 221, 532 P.2d 163. We accepted review. Decision of the Court of Appeals vacated and award of the Industrial Commission set aside.

Petitioner was a geology student at the University of Arizona. He worked for the

Phelps Dodge Corporation during the summer of 1969. In the summer of 1970 he again worked for the Phelps Dodge Corporation, with the understanding that in the fall he would return to school. Petitioner was hired as a field geologist. During the first 30 days of his summer employment he was injured, but was able to do work other than that for which he had been hired. He was paid $850.00 a month for each of the three summer months he worked.

▮ Petitioner suffered a 10% general disability involving partial loss of use of both legs. The hearing officer multiplied $850.00 by 3 [the months Petitioner worked] and divided by 12 [the months in a year] thus arriving at the figure of $212.50 which figure was used as Petitioner's average monthly wage. We think this was erroneous.

In 1925 the Legislature provided:

"Every employee in the employ °of an employer within the provisions of this act, who shall be injured by accident arising out of and in the course of employment, or his dependents, as hereinafter defined, in case of his death, shall be entitled to receive the following compensation on the basis of average monthly wage at time of injury. The term 'average monthly wage' shall be construed to mean the average wage paid during and over the month in which such employee shall be killed or injured." Ch. 83, § 70, Laws of 1925.

In 1933 the Legislature amended the foregoing act by adding a third sentence.

"In all instances in which the injured or killed employee had not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such sum as, having regard to the previous wage of the injured employee, or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he was working at the time of the accident." Ch. 11, § 6, Laws of 1933, 1st S.S.

Thereafter, the language remained substantially the same to the present time.

At present, Section 23-1041 A.R.S.1956 as amended by Laws of 1972 reads:

"A. Every employee of an employer within the provisions of this chapter who is injured by accident arising out of and in the course of employment, or his dependents in event of his death, shall receive the compensation fixed in this chapter on the basis of such employee's average monthly wage at the time of injury.

B. If the injured or killed employee has not been continuously employed for the period of thirty days immediately preceding the injury or death, the average monthly wage shall be such amount as, having regard to the previous wage or [sic] the injured employee or of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident.

\*    \*    \*    \*    \*    \*

D. The term 'monthly wage' means the average wage paid during and over the month in which the employee is killed or injured."

The "monthly wage" alluded to in Subsection D must obviously be read "average monthly wage" as it was prior to the revision of 1956 because the words "monthly wage" are not used in Subsection A and B of 23-1041. Unless so read, Subsection D is wholly without meaning.

The language of Subsection A of 23-1041 is plain and unequivocal. It says:

"Every employee \* \* \* who is injured \* \* \* shall receive the compensation fixed in this chapter on the

basis of such employee's average monthly wage at the time of injury."

Similarly, Subsection B insofar as it relates to this case reads:

"If the injured * * * employee has not been continuously employed for the period of thirty days immediately preceding the injury * * * the average monthly wage shall be such amount as * * * reasonably represents the monthly earning capacity of the injured employee in the employment in which he is working at the time of the accident."

The import of the word "average" as it is used in § 23–1041 is that there must be a base period of more than one month upon which to determine a claimant's wage. But Subsection B of the statute clearly mandates that where a claimant has not worked continuously for thirty days his average monthly wage is to be his monthly earning capacity. This becomes so simply because the statute says so. Petitioner must, therefore, be compensated on a basis of his earning capacity at the time of his injury. Any division by twelve months of an earning base established by three months of wages finds no support whatsoever in the statute.

█ While earning capacity is synonymous with the ability or power to earn rather than wages actually received, *Trzoniec v. General Controls Co.*, 100 R.I. 448, 216 A.2d 886 (1966), where there is no proof of earnings of other employees of the same class, proof of the actual earnings of a claimant is sufficient to properly represent his earning capacity, *Belliamo v. Marlin-Rockwell Corporation*, 215 App.Div. 845, 213 N.Y.S. 85 (1926). An employer can, of course, show that actual earnings are not a true measure of a claimant's earning capacity, *Sammis v. Queens Borough Gas & Electric Co.*, 257 App.Div. 58, 12 N.Y.S.2nd 286 (1939).

This is not such a case as *Dominguez v. Industrial Commission*, 22 Ariz.App. 578, 529 P.2d 732 (1974). There the issue was the proper manner of determining the average monthly wage of an injured seasonal worker, the worker being a fruit picker. In *Pettis v. Industrial Commission*, 91 Ariz. 298, 302, 372 P.2d 72, 75 (1962), we said:

"[s]easonal employment refers to occupations which can be carried on only at certain seasons or fairly definite portions of the year. It does not include such occupations as may be carried on throughout the entire year."

Any inferences or suggestions arising out of the language used in *Dominguez v. Industrial Commission,* supra, contrary to this opinion, are disapproved.

Nor is this case similar to that of *Powell v. Industrial Commission*, 104 Ariz. 257, 451 P.2d 37 (1969). There the claimant was a school teacher under contract of employment for a nine-month period. She was not injured during the first month of her employment and no contention was made that Subsection B of § 23–1041 was applicable. This case is not like *Gene Autry Productions v. Industrial Commission*, 67 Ariz. 290, 195 P.2d 143 (1948). Work in the movie industry is known to be intermittent and irregular. Rather, this case is similar to *Pacey v. Industrial Commission*, 93 Ariz. 1, 377 P.2d 1015 (1963), wherein the deceased was killed while employed as a welder's helper on the construction of a natural gas line across Northern Arizona. We held the work was not seasonal because there were opportunities for continuous employment in other pipe line jobs.

█ Petitioner's earning capacity is not to be determined by whether he intended to work steadily in the industry in which he is employed. The test is whether the employment not the worker is intermittent or erratic.

"To hold that the prior earnings of an employee are to be considered in determining his earning capacity when he is injured in a regular, continuous employment, even though shortly after the beginning of his service, would lead to

most absurd and unjust consequences. It would mean that an employee injured shortly after promotion would be compensated on the basis of prior and not present earning capacity, that one who had drawn a salary in some public position before accepting employment could have that considered to raise the compensation against his employer, or that a former student or a released prisoner would have his compensation decreased because unable to show prior earnings. Two men working at the same job and earning the same wage would receive different compensation for identical injuries because one had had large earnings in the preceding year and the other had been a student in college. Of course no such consequences were contemplated in the enactment of the statute; and an interpretation which would necessarily lead to them is to be avoided. Where the employment is of a permanent or continuous nature, the only fair method of computing compensation is to base it upon the earnings of the employment, and this is what we think the act requires." *O'Hearne v. Maryland Casualty Co.*, 177 F.2d 979, 982 (1949).

As was said in the English case of *Anslow v. Cannock Chase Colliery Co.*, L.R. App.Cas. (1909) 435, which we first quoted in *Brisendine v. Skousen Brothers*, 48 Ariz. 416, 420, 62 P.2d 326, 328 (1936):

"The object of the Act broadly stated is to compensate a workman for his loss of capacity to earn, which is to be measured by what he can earn in the employment in which he is, under the conditions prevailing therein, before and up to the time of the accident. If he takes a holiday and forfeits his wages for a month, then that does not interfere with what he can earn. It is only that for a month he did not choose to earn. So, too, if there be a casualty accidentally stopping the work. But if it is part of the employment to stop for a month in each year, then he cannot earn wages in that time in that employment, and his capacity to earn is less, over the year."

*See* also *Vinyard v. Industrial Commission*, 106 Ariz. 164, 472 P.2d 33 (1970).

The award of the Industrial Commission is set aside.

CAMERON, C. J., and HAYS, HOLOHAN and GORDON, JJ., concur.