BEULAH PARK JOCKEY CLUB, INC., ET AL., APPELLEES, *v.*
GARNES, ADMR., BUREAU OF EMPLOYMENT SERVICES, ET AL.,
APPELLANTS.

(No. 73-205—Decided December 19, 1973.)

*Messrs. Topper, Alloway, Goodman, DeLeone & Duffey, Mr. James F. DeLeone, Mr. Wallace J. Mayer, Jr., Messrs. Marshman, Snyder & Seeley, Mr. William F. Snyder, Messrs. Chester, Hoffman, Park, Wilcox & Rose* and *Mr. Charles S. Lopeman,* for appellees.

*Mr. William J. Brown,* attorney general, *Mr. James E. Uprichard, Jr.,* and *Mr. John F. Livorno,* for appellants.

*Per Curiam.* The fundamental question posed by this appeal is whether the decision of the Board of Review, affirming the order of the administrator revoking the classification of seasonal employment of the industry of horse racetrack operators in Ohio, is supported by reliable, probative or substantial evidence and is in accordance with law.

The Court of Appeals upheld a decision of the Court

of Common Pleas that it was not so supported upon a consideration of the whole record.

We affirm.

The record establishes that, from 1933 through 1970, all permits to conduct horse race meetings in Ohio have been limited to operation within a period of 40 weeks or less. It was customary for the horse racing industry to operate in regularly recurring periods of 40 weeks or less duration, because of climatic conditions and because of the seasonal nature of such industry. The record shows further that one departure was made from this custom in 1971, when Toledo-Maumee Raceways, Inc., applied for and was granted a permit to operate from January 9, 1971, to March 8, 1971. The reason for this application was that in the specific geographic location around Toledo, Toledo-Maumee Raceways was operating in competition with racetracks in the Detroit, Michigan, area and its off-season racing dates applied for and granted were, in effect, dictated and forced by this Detroit competition for economic survival. The seasonal conditions did not enter into the determination. Conversely, the permit was granted, not because of climatic conditions or any change in the seasonal nature of the industry, but because Toledo-Maumee Raceways specifically requested such dates.

There were 17 other racing associations that requested dates for the 1971 racing season and all of these requests were for dates within the customary regularly recurring 40-week period, actually for a total of 34 weeks and three days. It is only when Toledo's dates are included that the 40-week period was exceeded in 1971.

The administrator, in his reconsidered decision affirming the order revoking the classification of seasonal employment, stated, in part:

"The order, mailed January 5, 1971, revoking the classification of seasonal employment *was based* on the fact that the Ohio Racing Commission authorized horse racing meets for 1971, to include dates from January 9, 1971 through November 20, 1971. These dates include forty-

six calendar weeks. The additional weeks exceed the forty or less weeks authorized for seasonal employment classification." (Emphasis added.)

The board, as its reason for affirmance of the administrator's decision, stated:

"In the instant case, it is obvious that conditions have changed since 1956 and the industry of which all of the appellants are a part now operates during the coldest months of the year, with the operation extending for more than a period of forty weeks."

The board's reference to 1956 relates to a decision of the Court of Appeals for Franklin County in *Race Tracks of Ohio* v. *Bureau of Unemployment Compensation* (1956), 103 Ohio App. 503, wherein that court observed:

"* * * Had the Legislature included the winter months during the time when race meets might be conducted it would not have affected at all the practical operation of racing in Ohio, and horse racing would remain a seasonal sport."

The court concluded:

"It is our opinion that, by reason of and without respect to the statute and by common knowledge of which courts could take judicial notice, the operation of the sport of horse racing in Ohio is seasonal * * *."

As pointed out in the well-reasoned opinion of the trial judge, the board had absolutely no evidence before it of any change of climatic conditions or its effect on the horse racing industry as to any change in the seasonal nature of horse racing. The single change in 1971 from prior years was the instance of one racetrack in Ohio which was permitted to operate during the winter months solely because of extreme economic competition. The record is devoid of any evidence that the reason for this winter operation was a change in climatic conditions or a change in the seasonal nature of horse racing. Absent such evidence, it is customary for horse racetracks to operate during regularly recurring periods of 40 weeks or less and the horse racetrack industry is entitled to a classification of seasonal

employment as described in R. C. 4141.33(A)[1]. The decision of the Board of Review is not suported by any reliable, probative or substantial evidence and is not in accordance with law.

The judgment of the Court of Appeals is, therefore, affirmed.

*Judgment affirmed.*

O'NEILL, C. J., HERBERT, CORRIGAN, STERN and P. BROWN, JJ., concur.

CELEBREZZE and W. BROWN, JJ., dissent.

WILLIAM B. BROWN, J., dissenting. I agree with the formulation of the issue by the majority as:

[1] R. C. 4141.33(A) reads as follows:

" 'Seasonal employment' means employment of individuals hired primarily to perform services in an industry which because of climatic conditions or because of the seasonal nature of such industry it is customary to operate only during regularly recurring periods of forty weeks or less in any consecutive fifty-two weeks. 'Seasonal employer' means an employer determined by the administrator of the bureau of employment services to have seasonal employment in a seasonal industry. Any employer who claims to have seasonal employment in a seasonal industry may file with the administrator a written application for classification of such employment as seasonal. Whenever in any industry it is customary to operate because of climatic conditions or because of the seasonal nature of such industry only during regularly recurring periods of forty weeks or less duration, benefits shall be payable only during the longest seasonal periods which the best practice of such industry will reasonably permit. The administrator shall determine, after investigation, hearing, and due notice, whether the industry is seasonal and, if seasonal, establish seasonal periods for such seasonal employer. Until such determination by the administrator, no industry or employment shall be deemed seasonal. When the administrator has determined such seasonal periods, he shall also fix the proportionate number of weeks of employment and earnings required to qualify for seasonal benefit rights in place of the weeks of employment and earnings requirement stipulation in division (R) of Section 4141.01 and Section 4141.30 of the Revised Code, and the proportionate number of weeks for which seasonal benefits may be paid. The administrator may adopt rules and regulations for implementation of this section."

"'* * * whether the decision of the Board of Review, affirming the order of the administrator revoking the classification of seasonal employment of the industry of horse racetrack operators in Ohio, is supported by reliable, probative or substantial evidence and is in accordance with law.''

In denying the horse-racing industry a ''seasonal'' classification, the administrator was acting in compliance with R. C. 4141.33 which provides, in pertinent part:

''(A) 'Seasonal employment' means employment of individuals hired primarily to perform services *in an industry which because of climatic conditions or because of the seasonal nature of such industry it is customary to operate only during regularly recurring periods of forty weeks or less in any consecutive fifty-two weeks.* 'Seasonal employer' means an employer determined by the Administrator of the Bureau of Employment Services to have seasonal employment in a seasonal industry. Any employer who claims to have seasonal employment in a seasonal industry may file with the administrator a written application for classification of such employment as seasonal.'' (Emphasis added.)

According to R. C. 4141.33, the administrator can grant ''seasonal'' classification to the horse-racing industry only when, because of *climatic conditions* or the *seasonal nature* of the industry, it customarily operates for 40 or less weeks out of the year. Those words ''climatic conditions'' and ''seasonal nature,'' although written in the disjunctive, should be construed together in determining whether an industry is eligible for the seasonal classification. In construing a similar provision of the Arizona Workmen's Compensation law, the court, in *Pettis* v. *Indus. Comm.* (1962), 91 Ariz. 298, 302, 372 P. 2d 72, held:

''* * * Seasonal employment refers to occupations which can be carried on only at certain seasons or fairly definite portions of the year. It does not include such occupations as may be carried on throughout the entire year.''

In reviewing the board's decision, it is necessary to

determine where the burden or proof lies in deciding on the classification. R. C. 4141.26 provides for review of the decisions of the administrator by the Board of Review, whose decision in turn is reviewable by the Court of Common Pleas of Franklin County. The standard of review is established by R. C. 4141.26 as:

"* * * The court may affirm the determination or order complained of in the appeal if it finds, upon consideration of the entire record, that the determination or order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding it may reverse, vacate, or modify the determination or order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. The judgment of the court shall be final and conclusive unless reversed, vacated, or modified on appeal. * * *"

This court has not construed that quoted part of R. C. 4141.26, but it has construed a parallel part of R. C. 119.12.[2] In the first paragraph of the syllabus of *Andrews* v. *Board of Liquor Control* (1955), 164 Ohio St. 275, the court held:

"Under Section 154-73, General Code, as amended in 1951 (Section 119.12, Revised Code), in an appeal from the Board of Liquor Control to the Court of Common Pleas of Franklin County, * * * if from such a consideration it [the court] finds that the board's order is not supported by reliable, probative and substantial evidence and is not in accordance with law, the court is authorized to reverse, vacate, or modify the order of the board."

---

[2]R. C. 119.12:
"The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and such additional evidence as the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. The judgment of the court shall be final and conclusive unless reversed, vacated, or modified on appeal. * * *"

Appellees attempt to shift the focus of our attention, claiming that the question is what evidence did the board have before it of a change in climatic conditions for horse racing. Rather, the question should be: Whether there is any "reliable, probative, and substantial evidence" to support the board's decision denying the seasonal exemption to the industry.

The record before the board indicated that horse racing was approved for and was being conducted in Toledo from January to March. This of itself was sufficient evidence that horse racing was not an industry in Ohio which "because of the seasonal nature of such industry it is customary to operate only during regularly recurring periods of forty weeks or less."[3]

Appellees contend that the decision of the Toledo race track operators to request winter racing dates was determined by a change in the economic situation (competition with Detroit area race tracks), rather than a change in climatic conditions. This contention further supports the board's decision. If economic factors are so determinative of the racing season that races can be held in the dead of winter in Toledo, then the decision to refuse a seasonal exemption was supported by reliable, probative, and substantial evidence.

The ruling for appellees was made by the lower courts

---

[3]Evidence that the industry is not seasonal is bolstered by the industry's publication, Trotting and Racing Guide, showing that cold weather is not a deterrent to racing and that races are held in the wintertime in Michigan, northern Illinois, and at various colder locations in Canada, *e. g.*:

| "Location | Racetrack | Season |
|---|---|---|
| "Northville, Michigan | Northville Downs | Jan. 1-27 |
| "N. Aurora, Illinois | Aurora Downs | Jan. 1-Feb. 17 |
| "Toronto, Ontario | Greenwood Rcwy. | Jan. 1-Mar. 17 |
| "Montreal, Quebec | Blue Bonnets Rcwy. | Jan. 4-Apr. 29 |
| "Quebec City, Que. | Jacques-Cartier | Jan. 13-Dec. 16 |
| "Lower Sackville, Nova Scotia | Sackville Downs | May 5-Nov. 12." |

on the basis that there was no evidence of a change in climatic conditions; such decisions resulted from a misunderstanding of the standard of review established by R. C. 4141.26. A reviewing court may not substitute its judgment of the facts for that of an agency. *Citizens to Preserve Overton Park* v. *Volpe* (1971), 401 U. S. 402, 416. And inferences drawn from the facts are for the agency to determine, as the United States Supreme Court said in *N. L. R. B.* v. *Nevada Consolidated Copper Corp.* (1942), 316 U. S. 105, 107, "* * * if the findings of the board are supported by evidence the courts are not free to set them aside, even though the board could have drawn different inferences."

So, since there was reliable, probative, and substantial evidence before the board to support its decision, as has been shown, the judgment of the Court of Appeals should have been reversed.

CELEBREZZE, J., concurs in the foregoing dissenting opinion.